Jacob Matthew KIFFE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–10–00746–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 13, 2011.

Discretionary Review Refused
March 7, 2012.

Jon A. Jaworski, Law Office of Jon A. Jaworski, Houston, TX, for Appellant.

Lisa G. Porter, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, BLAND, and MASSENGALE.

## OPINION

JANE BLAND, Justice.

A jury convicted Jacob Matthew Kiffe of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West 2011). Kiffe stipulated to two prior convictions of driving while intoxicated. The trial court assessed his punishment at three years' community supervision, with a suspended sentence of five years' confinement. On appeal, Kiffe contends that the evidence is legally and factually insufficient to support his conviction of driving while intoxicated. Alternatively, he maintains that the single standard of review announced in *Brooks v. State*[1] is unconstitutional, and that the evidence is insufficient under the former standard of review for factual sufficiency challenges. We affirm.

## Background

In December 2008, during the morning hours, Suzette Floyd was driving her vehicle southbound along Highway 6 with her son, Curtis. Kiffe was driving his vehicle northbound along the same highway. Kiffe's vehicle was swerving as it approached the Floyds. Kiffe nearly rear-ended the vehicle in front of him, but at the last moment again swerved, clipping the rear driver-side door of that vehicle. Kiffe then crossed into oncoming traffic and struck the front of the Floyds' vehicle. Both airbags deployed in the Floyd's vehicle, which was totaled in the collision. Suzette was uninjured, and Curtis suffered minor injuries.

Immediately after the collision, Suzette, Curtis, and Kiffe exited their vehicles. Suzette stated that Kiffe appeared drunk. According to Suzette, Kiffe staggered

when he walked, slurred his speech when he spoke, and had the smell of alcohol on his breath. Curtis also thought Kiffe was drunk. Curtis testified that Kiffe had a "discombobulated look on his face" and staggered around as if he could not maintain his balance. He said that Kiffe looked "just . . . out of it." Both Suzette and Curtis said that Kiffe appeared uninjured.

State Trooper C. Terry was the first police officer to arrive at the scene of the accident. Kiffe told Trooper Terry that the accident was his fault. Trooper Terry observed that Kiffe had an unstable gait, pinpointed pupils, and slurred speech. Based on these characteristics and his experience as a state trooper, Trooper Terry concluded that Kiffe was intoxicated. He did not smell alcohol on Kiffe, but believed he was under the influence of a narcotic. He did not conduct a field sobriety test on Kiffe because EMS was in route to provide him with medical attention. Kiffe informed Trooper Terry that he had not consumed any alcohol and had not taken any medications. He did not reveal any medical conditions or injuries. Trooper Terry stated that Kiffe had no observable injuries at the accident scene.

EMS technicians took Kiffe to the hospital. While in route, Kiffe told the technicians that he had taken "1/2 a bar of Xanax" the night before the accident. He denied any alcohol or drug use on the day of the accident. He said that he had a history of seizures, depression, and anxiety and complained of right leg pain. He told the technicians that he thought a seizure might have caused the accident. At the hospital, blood tests were conducted on Kiffe, which revealed no alcohol to be present in his system. Medical personnel did not test for the presence of controlled substances. The medical records indicate,

1. *See Brooks v. State*, 323 S.W.3d 893 (Tex. Crim.App.2010).

however, that Kiffe had "confused, abnormal speech," and no head trauma. His cardiovascular and respiratory systems were normal. But he was not oriented to time and had very slurred speech. Medical personnel wrote an initial diagnosis of "suspected opiate [illegible] intoxication," and his departure diagnosis was "[a]pparent intoxication opiates/m."

Trooper Terry also observed Kiffe at the hospital. Kiffe still had pinpointed pupils and a dazed expression on his face. Terry requested a urine sample from Kiffe for urinalysis testing, but Kiffe refused to give a sample. Terry arrested Kiffe for driving while intoxicated. On the way to the police station, Kiffe slurred his speech, was very talkative, and eventually fell asleep.

Dr. Joseph Toothaker–Alvarez, Kiffe's expert witness, diagnosed Kiffe with severe depression and panic disorder. He also noted that Kiffe had a history of insomnia. Dr. Toothaker–Alvarez said that psycho-motor retardation, like that Kiffe exhibited, is a symptom of major depression. An individual who suffers from psycho-motor retardation may have a slowed thought process, slowed speech, and flat affect. An observer could misinterpret these symptoms as signs of intoxication. Dr. Toothaker–Alvarez also testified that a seizure or a head injury can cause dozing-off, pinpoint pupils, unstable gait, and slurred speech. He opined that nothing in Kiffe's medical records indicated a diagnosis of narcotic intoxication. He described the records as reflecting "routine blood tests." He testified that Kiffe's respiratory rates were a "subtle sign" that Kiffe was not abusing narcotics.

Dr. Toothaker–Alvarez stated that Xanax induces a state of euphoria and that its effects last for hours. If abused, Xanax can affect a person's central nervous system and impair his cognitive abilities and performances. Opiates likewise affect a person's central nervous system in a way that impairs motor skills. Kiffe reported to Dr. Toothaker–Alvarez that, although he was not receiving treatment for his problems from a physician or psychiatrist, he took Valium on a daily basis and Vicodin on an intermittent basis. Dr. Toothaker–Alvarez testified that both Valium and Vicodin affect the central nervous system, and if a person used them together one of the drugs could cause the other to have a more potent affect on the central nervous system.

## Discussion

### Sufficiency of the Evidence

#### 1) Standard of Review

This Court reviews legal and factual sufficiency challenges using the same standard of review. *Ervin v. State*, 331 S.W.3d 49, 54 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex.Crim.App.2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 & n. 11; *Laster*,

275 S.W.3d at 518; *Williams,* 235 S.W.3d at 750. Additionally, the evidence is insufficient as a matter of law if the acts alleged do not constitute the criminal offense charged. *Williams,* 235 S.W.3d at 750.

An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007) (citing *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App. 2007)). In viewing the record, direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Clayton,* 235 S.W.3d at 778. An appellate court also defers to the factfinder's evaluation of the credibility and weight of the evidence. *See Williams,* 235 S.W.3d at 750.

A person is guilty of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). Driving while intoxicated is a third-degree felony if it is shown at trial that the defendant has previously been convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated...." *Id.* § 49.09(b)(2).

**2) Analysis**

Kiffe claims that the evidence was insufficient to prove that he was intoxicated by use of alcohol or drugs. For purposes of the statute, proving an exact intoxicant is not an element of the offense. *Gray v. State,* 152 S.W.3d 125, 132 (Tex. Crim.App.2004). Circumstantial evidence may prove that a person has lost the normal use of his mental or physical faculties by reason of introduction of a controlled substance or drug into his body. *See Smithhart v. State,* 503 S.W.2d 283, 284 (Tex.Crim.App.1973). A lack of balance and slurred speech can prove intoxication. *Griffith v. State,* 55 S.W.3d 598, 601 (Tex. Crim.App.2001) ("Since the definition of 'intoxicated' includes 'not having the normal use of mental or physical faculties,' any sign of impairment in the appellant's ability to speak would be circumstantially relevant to whether he was legally intoxicated while driving.") (quoting Tex. Penal Code § 49.01(2)(A)); *see also Cotton v. State,* 686 S.W.2d 140, 142 n. 3 (Tex.Crim. App.1985) (noting that evidence of intoxication includes slurred speech, unsteady balance, and staggered gait). Also, as a general rule, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for the offense of DWI. *See Annis v. State,* 578 S.W.2d 406, 407 (Tex. Crim.App.1979) (reasoning that officer's testimony that person was intoxicated provided sufficient evidence to establish element of intoxication); *see also Henderson v. State,* 29 S.W.3d 616, 622 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (stating that the testimony of a police officer that individual is intoxicated is probative evidence of intoxication).

The Floyds and Trooper Terry observed Kiffe's loss of physical and mental faculties in his slurred speech, unstable gait, and pinpointed pupils. The Floyds thought that Kiffe appeared drunk. Based on his experience, Trooper Terry believed that Kiffe was intoxicated and under the influence of a narcotic because he did not smell alcohol on Kiffe. Kiffe's driving was erratic. Before the collision, Kiffe was swerv-

ing in and out of his lane. He hit the vehicle in front of him and then drove into on-coming traffic.

According to the medical records, Kiffe was diagnosed with apparent intoxication by opiates. Kiffe admitted to consuming Xanax the night before the crash, and he admitted that he takes Valium on a daily basis and Vicodin on an intermittent basis. Dr. Toothaker–Alvarez testified that these drugs affect a person's central nervous system and can impair a person's cognitive abilities and performances. *See Paschall v. State*, 285 S.W.3d 166, 177 (Tex.App.-Fort Worth 2009, pet. ref'd) (holding that evidence was sufficient to support felony DWI conviction where defendant admitted on medical intake sheet that he was taking two prescription drugs, central nervous system depressants, that cause person intoxicated by their use to exhibit slurred speech, affected balance, abnormal gait, and constricted pupils, and police officer observed these characteristics in defendant); *Landers v. State*, 110 S.W.3d 617, 620–21 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (holding evidence sufficient to support felony DWI conviction when appellant admitted ingesting prescription medication and appeared sluggish, stumbled, had poor coordination, and slurred her words). In addition, Kiffe refused to submit to a urine analysis. *See* Tex. Transp. Code § 724.061; *Bartlett v. State*, 270 S.W.3d 147, 153 n. 20 (Tex.Crim. App.2008) (defendant's refusal to submit to breath test relevant to show consciousness of guilt). These pieces of evidence provide some proof that a jury could credit in concluding that Kiffe had lost his normal physical or mental faculties due to an intoxicant.

Dr. Toothaker–Alvarez testified that other reasons could explain all of the symptoms observed by Trooper Terry, the Floyds, and the medical personnel. It is the responsibility of the fact finder, however-er, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The jury could have reasonably chosen to place greater weight on the testimony of the witnesses, who observed Kiffe on the day of the offense, than Dr. Toothaker–Alvarez, who observed him months later.

Reviewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Kiffe was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04. Accordingly, we hold that the evidence was legally and factually sufficient to support appellant's conviction. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750.

### Challenge to Single Standard of Review

 Kiffe maintains that the single standard of review that the Texas Court of Criminal Appeals announced in *Brooks v. State* is unconstitutional and that the evidence is insufficient under the former standard of review for factual sufficiency challenges. *See* 323 S.W.3d 893 (Tex. Crim.App.2010) (Hervey, J., joined by Keller, J., Keasler, J., and Cochran, J. in plurality opinion) (Cochran, J. and Womack, J. concurring, in agreement that the *Jackson v. Virginia* standard is the applicable standard for all reviews of the evidence in criminal cases).

 As an appellate court, we are duty bound to follow precedent issued by the Texas Court of Criminal Appeals in this matter. *Ervin*, 331 S.W.3d at 53. Although an intermediate appellate court's decision "shall be conclusive on all questions of fact brought before them on appeal or error," the Texas Court of Criminal Appeals has the authority to determine questions of law, including the standard of

review that an intermediate appellate court must use in conducting factual review. *See* TEX. CONST. art. V, § 6(a) (providing for questions of fact to be resolved by intermediate appellate courts); *Roberts v. State*, 221 S.W.3d 659, 663 (Tex.Crim. App.2007). In *Brooks*, the Court of Criminal Appeals directed intermediate courts to apply a single standard of review to legal and factual sufficiency challenges in criminal cases, using the *Jackson* standard. *Brooks*, 323 S.W.3d 893 at 901. The Court of Criminal Appeals determined that the *Clewis* standard should no longer be applied to review the factual sufficiency of the evidence, and instructed lower courts to follow the *Jackson* standard for the review of factual-sufficiency challenges. *Id.* In numerous later decisions, the Court of Criminal Appeals has reaffirmed its directive to the courts of appeals—not merely as a plurality of the court, but instead by its now unanimous precedent. *See, e.g., Martinez v. State*, 327 S.W.3d 727, 730 (Tex.Crim.App.2010); *Griego v. State*, 337 S.W.3d 902, 903 (Tex.Crim.App.2011) (per curiam). We are bound to follow the Court of Criminal Appeals, and we apply the *Jackson* sufficiency standard of review to complaints styled as legal or factual sufficiency challenges concerning the elements of a criminal offense. *Ervin*, 331 S.W.3d at 54. Accordingly, we reject Kiffe's challenge to the single standard of review announced in *Brooks*.

### Conclusion

We hold that the evidence is legally and factually sufficient to support the conviction. We therefore affirm the judgment of the trial court.

TERRY JENNINGS, Justice, concurring.

Because the evidence is legally sufficient to support the conviction of appellant, Ja-cob Matthew Kiffe, of the offense of driving while intoxicated, I concur in the judgment of this Court. However, I write separately to explain why I do so in regard to the constitutional issues and the question of fact presented to this Court by appellant in light of my concurring opinion in *Ervin v. State*, 331 S.W.3d 49, 56–70 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd) (Jennings, J., concurring).

In his first issue, appellant argues that this Court, which has conclusive and final jurisdiction over his question of fact, should not apply a legal-sufficiency standard of review to address his question of fact, which he presents in his third issue, because doing so deprives him of his state constitutional and statutory right to have his question of fact addressed as a question of fact and his appellate remedy of a new trial. *See* TEX. CONST. art. V, § 6(a); TEX. CODE CRIM. PROC. ANN. art. 44.25 (Vernon 2006) (entitled, "Cases Remanded"). He asserts that applying the legal-sufficiency standard of review to his question of fact and depriving him of his appellate remedy of a new trial violates his federal and state rights to due process of law. *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19.

Given the express language of article V, section 6 of the Texas Constitution and article 44.25 of the Texas Code of Criminal Procedure, it is readily apparent that answering appellant's question of fact as a purely legal question violates the United States Constitution's guarantee of due process of law, as well as its guarantee of the equal protection of the laws, because it, in fact, deprives him of his well-established Texas appellate remedy of a new trial, recognized in the Texas Constitution and by the Texas Legislature in article 44.25.[1]

---

1. As early as 1841, the Supreme Court of the

Republic of Texas recognized that "the defen-

See U.S. CONST. amends. V, XIV; *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (concluding in states that provide for appellate review, criminal defendant is entitled to protections afforded under Due Process and Equal Protection Clauses of United States Constitution); *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 111, 117 S.Ct. 555, 561, 136 L.Ed.2d 473 (1996) (emphasis added) (quoting *Rinaldi v. Yeager*, 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966)) ("This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.").

However, as I noted in *Mosley v. State*, this Court in *Ervin*, in light of the Texas Court of Criminal Appeal's plurality opinions in *Brooks v. State*, [2] decided to answer

dant in a criminal prosecution in the district court has the right of appeal to this court from the judgment, or sentence of the court below, and *to have the facts* as well as the law, at his own election, *opened for reexamination." Republic v. Smith*, Dallam 407, 410–11, 1841 WL 3098 (Tex.1841) (emphasis added).

Texas has always recognized that a party on appeal may challenge as erroneous a fact finding on the grounds that (1) as a question of law, the issue should not have been submitted to the jury at all, i.e., the evidence is legally insufficient to support the finding, or (2) as a question of fact, although the issue was properly submitted to the jury with legally-sufficient evidence, the jury erred in weighing the evidence, i.e., the evidence is factually insufficient to support the finding. *See Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898).

2. The plurality in *Brooks* purported to substitute a legal-sufficiency appellate standard of review in place of a factual-sufficiency appellate standard of review for questions of fact in criminal cases, asserting that the two standards "have become essentially the same." 323 S.W.3d 893, 895 (Tex.Crim.App.2010) (Hervey, J., joined by Keller, J., Keasler, J., and Cochran, J.); *see id.* at 912–26 (Cochran, J., joined by Womack, J., concurring) (holding that legal-sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) is "only standard" reviewing court should apply in determining whether evidence is sufficient to support each element of criminal offense).

However, the legal-sufficiency standard of review as articulated by the United States Supreme Court in *Jackson*, which provides the minimum protection against wrongful conviction required by the Due Process Clause of the United States Constitution, is quite different from the factual-sufficiency standard of review utilized by Texas courts. The *Jackson* legal-sufficiency standard cannot be mistaken for a factual-sufficiency standard because the scope of review under *Jackson* is limited to the evidence viewed "in the light most favorable to the prosecution," i.e., the evidence is not weighed, and a successful challenge under *Jackson* results in an acquittal and not a new trial. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). Also, the *Jackson* standard does not implicate a Texas court of appeals' constitutional duty to decide questions of fact by considering and weighing all the evidence in a record because it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. And the question whether the evidence is legally sufficient under *Jackson* "*is of course wholly unrelated to the question of how rationally the verdict was actually reached* .... [T]he standard announced today ... does not require scrutiny of the reasoning process" used by the fact-finder. *Id.* at 319 n. 13, 99 S.Ct. at 2789 n. 13 (emphasis added). Moreover, the consequences surrounding the prosecution of an accused based on legally-insufficient evidence have been clearly explained by the United States Supreme Court:
[T]he Double Jeopardy Clause precludes retrial [of an accused] "once the reviewing court has found the evidence legally insufficient" to support conviction. This standard, we explained, "means that the government's case was so lacking that *it should not have even been submitted* to the jury." A conviction will survive review whenever

questions of fact in criminal appeals as pure questions of law by applying the legal-sufficiency appellate standard of review to fact questions and viewing the evidence in the light most favorable to the prosecution, not neutrally reweighing it. *Mosley v. State,* 355 S.W.3d 59 (Tex.App.-Houston [1st Dist.] 2010, pet. ref'd) (Jennings, J., concurring); *see Brooks v. State,* 323 S.W.3d 893, 901 (Tex.Crim.App.2010) (Hervey, J., joined by Keller, J., Keasler, J., and Cochran, J.); *see id.* at 912–26 (Cochran, J., joined by Womack, J., concurring) (purporting to overrule use in criminal cases of factual-sufficiency appel-

late standard of review, which was consistent with Texas Supreme Court precedent and articulated in *Clewis v. State,* 922 S.W.2d 126, 134–36 (Tex.Crim.App.1996)); *see also Jackson,* 443 U.S. 307, 99 S.Ct. 2781 (articulating legal-sufficiency standard of review in criminal cases). Although the majority in *Ervin* erred in doing so, this Court did have jurisdiction to so err, and, unless this Court subsequently overrules *Ervin,* we must accept *Ervin* as binding precedent. *See Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964). Nevertheless, appellant's issues have merit and *Ervin* should be overruled.

"the evidence and inferences therefrom *most favorable to the prosecution* would warrant the jury's finding the defendant guilty beyond a reasonable doubt." In sum, we noted that the rule barring retrial would be "confined to cases where the prosecution's failure is clear." ...

[T]he Double Jeopardy Clause attaches special weight to judgments of acquittal. A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the [legal] insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.

*Tibbs,* 457 U.S. at 40–41, 102 S.Ct. at 2217 (citations omitted) (emphasis added). In short, evidence is legally insufficient where the "only proper verdict" is acquittal. *Id.* at 42, 102 S.Ct. at 2218. On the other hand,

A reversal on [a factual-sufficiency] ground, unlike a reversal based on [legally-] insufficient evidence, *does not mean that acquittal was the only proper verdict.* Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' *weighing of the evidence* does not require the special deference accorded verdicts of acquittal.

A reversal based on the *weight of the evidence,* moreover, can occur *only after the State both has presented [ legally] sufficient evidence to support conviction and has persuaded the jury to convict.* The reversal simply affords the defendant a second opportunity to seek a favorable judgment. An appellate court's decision to give the defendant this second chance does not create "an unacceptably high risk that the Government, with its superior resources, [will] wear down [the] defendant" and obtain conviction solely through its persistence.

*Id.* at 42–43, 102 S.Ct. at 2218–19 (citations omitted) (emphasis added). Thus, the United States Supreme Court expressly rejected the argument that a "distinction between the weight [ (factual sufficiency) ] and [legal] sufficiency of the evidence is unworkable," noting that "trial and appellate judges commonly distinguish between the weight [ (factual sufficiency) ] and [legal] sufficiency of the evidence" and the Due Process Clause "sets a *lower limit* on an appellate court's definition of evidentiary sufficiency." *Id.* at 44–45, 102 S.Ct. at 2219–20 (emphasis added). The Court further stated,

Our decisions also make clear that disagreements among jurors or judges do not themselves create a reasonable doubt of guilt. As Justice WHITE, ... explained, "[t]hat rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable-doubt standard."

*Id.* at 42 n. 17, 102 S.Ct. at 2218 n. 17 (quoting *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 1624, 32 L.Ed.2d 152 (1972)).

To understand what went wrong in *Ervin,* one must understand that Texas has a judicial structure, which, in the words of some members of the Texas Supreme Court, is a "jurisdictional mishmash 'unimaginably abstruse,' a tangle that has 'gone from elaborate to Byzantine.'" *In re Reece,* 341 S.W.3d 360, 382 (Tex.2011) (Willett, J., concurring). In the words of Justice Willett, our "[f]ragmented [s]tructure is [m]uch [m]aligned, and [d]eservedly [s]o." *Id.* at 381. As he explained in *Reece:*

> The convoluted make-up of the Texas judiciary—"one of the most complex in the United States, if not the world"—does not lack for critics, from the litigants who endure it, the lawyers who navigate it, and the judges who lead it. In 1991, this Court's appointed Citizens' Commission on the Texas Judicial System reached a stark but unsurprising conclusion: "Texas has no uniform judicial framework to guarantee the just, prompt and efficient disposition of a litigant's complaint.... With the passage of time, the organization of the courts has become more, not less cumbersome." That critique mirrors one that same year from the Texas Research League ("TRL"), which former Chief Justice Phillips had asked to scrutinize our judicial structure and suggest concrete improvements. The system's mind-numbing complexity led TRL to lament in May 1991 that the Texas judiciary was in "disarray" and "ill-equipped to meet the needs of the 21st century," adding, "Texas does not have a court system in the real sense of the word." Indeed, "assigning the appellation 'system' to our state courts might require a long stretch of the imagination." Nothing has improved, and interestingly, the most strenuous critics, it seems, are those who know the system best: the judges.

*Id.* at 381–82 (citations omitted). In regard to the fact that Texas has not one, but two courts of last resort, Justice Willett observed, "our dichotomized system invites inter-court confusion, and as Texas history shows, inter-court clashes," including the fact that "conflicts between the dual courts have arisen *over the conclusivity of the courts of appeals' factual determinations." Id.* at 384. (emphasis added). Indeed, some members of the Texas Court of Criminal Appeals have expressed their concern that "this State's bifurcated judicial process could sometimes generate conflicting decisions at the highest level on identical questions of law." *State ex rel. Holmes v. Honorable Court of Appeals for the Third District,* 885 S.W.2d 389, 418–19 (Tex.Crim.App.1994) (Meyers, J., dissenting).

> Such is the case here. In regard to appellate challenges based on the factual insufficiency of the evidence, the factual-conclusivity clause of the Texas Constitution provides in no uncertain terms that
>
> [T]he decision of [Texas Courts of Appeals] shall be *conclusive* on all questions of fact brought before them on appeal or error.

TEX. CONST. art. V, § 6(a) (emphasis added). The Texas Supreme Court has long recognized, under the express language of article V, section 6 that its jurisdiction is confined to addressing questions of law and Texas' intermediate appellate courts have conclusive and final jurisdiction over questions of fact and the ability to award a new trial. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633–35 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898); *Mo. Pac. Ry. v. Somers,* 78 Tex. 439, 14 S.W. 779, 779 (1890). Indeed, "it is the right and duty of the court [of appeals]

to set aside a verdict, when it is against such a preponderance of the evidence that it is clearly wrong." *Somers,* 14 S.W. at 779.

On the other hand, our court of criminal appeals has struggled with the express language of the factual-conclusivity clause and its implications. The court has in the past been criticized because, "in spite of a constitutional mandate to the contrary," it had, unlike the supreme court, "continue[d] to refuse to recognize the authority of the courts of appeals to determine questions of factual sufficiency of the evidence." Susan Bleil & Charles Bleil, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question,* 23 ST. MARY'S L.J. 423, 424 (1991). Yet, in fact, "[t]here is no sound basis for the disparate interpretations of a single constitutional provision based on whether the matter on appeal is civil or criminal in nature." *Id.*

Regardless of how complex our judicial system may be and the seemingly inevitable conflicts in constitutional interpretation by our two courts of last resort, it is still our job, as judges, to sort through the "mishmash," resolve the issues presented to us in accordance with the law, and fulfill our sworn duty to preserve, protect, and defend the Texas Constitution, our pole star. We, as an intermediate court of appeals, have an express, well-established, and long-recognized constitutional and statutory duty to address appellant's question of fact as a question of fact and, if he prevails, to remand his case for a new trial. *See* TEX. CONST. art. V, § 6(a); TEX.CODE CRIM. PROC. Ann. art. 44.25; *Pool,* 715 S.W.2d at 633–35; *In re King's Estate,* 244 S.W.2d at 661–62; *Choate,* 44 S.W. at 69; *Somers,* 14 S.W. at 779. And our "action upon such questions *is made final,* and not subject to be reviewed by [our higher] court[s]." *Choate,* 44 S.W. at 69 (emphasis added). As recently recognized by the

court of criminal appeals itself, "[t]he Factual Conclusivity Clause gives *final appellate jurisdiction* to the court of appeals on questions of fact brought before the court." *Laster v. State,* 275 S.W.3d 512, 518 (Tex.Crim.App.2009) (emphasis added).

It is true that the court of criminal appeals has characterized its holding in *Brooks,* in which it purported to substitute a legal-sufficiency standard of appellate review for a factual sufficiency standard, as "abolishing" factual sufficiency review in criminal cases in Texas. *See Howard v. State,* 333 S.W.3d 137, 138 n. 2 (Tex.Crim. App.2011). However, three years prior to issuing its opinion in *Clewis,* the court itself acknowledged that it simply may not order Texas courts of appeals to use a legal-sufficiency appellate standard of review to decide the questions of fact brought before them on appeal. *Ex parte Schuessler,* 846 S.W.2d 850, 852 (Tex.Crim. App.1993). Recognizing that it may not "interfere[ ] with the fact jurisdiction of the intermediate appellate courts," the court emphasized that it is "not constitutionally authorized to adopt a standard of review for the court[s] of appeals . . . *inconsistent* with Art. V, § 6 of [the Texas] Constitution." *Id.* at 853 (emphasis added) (quoting *Meraz v. State,* 785 S.W.2d 146, 153 (Tex.Crim.App.1990)). Any such action taken by the court of criminal appeals is, in its own words, "void *ab initio,*" i.e., from its inception. *Id.*

It is important to note that although the court of criminal appeals in *Brooks* overruled *Clewis* in regard to articulating its new appellate standard for factual-sufficiency claims, it did not overrule any of its jurisprudence acknowledging our *"final appellate jurisdiction"* over the "questions of fact brought before [us]." *See Laster,* 275 S.W.3d at 518–19 (emphasis added). In fact, in *Roberts v. State,* the

same five judges who in *Brooks* purported to substitute a legal-sufficiency standard of review for a factual-sufficiency standard of review, noted:

> Factual-sufficiency jurisprudence in civil cases is very persuasive in criminal cases like this because factual-sufficiency jurisprudence in criminal cases *is meant to be "in line with civil practice." See Watson*, 204 S.W.3d at 415. The factual-conclusivity clause in Article V, Section 6, of the Texas Constitution, makes a direct-appeal court's factual-sufficiency decision *final and conclusive upon this Court.*[ ] *See Watson*, at 439. This Court's review of a direct-appeal court's factual-sufficiency decision *is limited by the factual-conclusivity clause to determining only whether the direct-appeal court properly applied "rules of law." See Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69, 69–70 (Tex. 1898) (purpose of factual-conclusivity clause was to restrict Texas Supreme Court's jurisdiction to questions of law and to make direct-appeal court's factual-sufficiency decisions conclusive).

221 S.W.3d 659, 662–63 (Tex.Crim.App. 2007) (emphasis added). Judge Hervey, writing for Presiding Judge Keller and Judges Womack, Keasler and Cochran, emphasized:

> This concept is illustrated in the Texas Supreme Court's landmark decision in *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951). There, the Texas Supreme Court decided that the factual-conclusivity clause did not prohibit it from taking jurisdiction *to decide, as a matter of law, that the direct-appeal court applied an incorrect standard (a no-evidence standard) in addressing a party's factual-sufficiency claim. Id.; see also Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634–35 (Tex.1986) (*In Re King's Estate* established that "the supreme court might take jurisdiction, notwithstanding the finality of judgments of the courts of civil appeals on fact questions, in order to determine if a correct standard has been applied by the intermediate courts").

*Id.* at 663. The five court of criminal appeals judges, obviously aware that a legal-sufficiency standard is "an incorrect standard" to apply "in addressing a party's factual sufficiency claim," acknowledged that "[t]he issue in *In Re King's Estate* was not whether the direct-appeal court improperly applied a factual-sufficiency standard, **but whether it undertook to apply that standard at all.**" *Id.* at 663 n. 5 (citation included) (emphasis added). And it "recognized that *In Re King's Estate* is 'useful in explaining the proper procedures to follow in conducting factual sufficiency analysis.'" *Id.* at 663 n. 4 (citing *In re King's Estate*, 244 S.W.2d at 661–62). Thus, Judge Hervey, writing for her four colleagues, concluded:

> In this case, we cannot conclude that the Court of Appeals' factual-sufficiency decision improperly applied "rules of law." *See Dyson*, 692 S.W.2d at 457; *Choate*, 44 S.W. at 69–70. *Its opinion does not apply an incorrect standard by treating appellant's factual-sufficiency challenge as some other challenge*, as was the case in *In Re King's Estate*, 244 S.W.2d at 661.

*Id.* at 665 (citations included) (emphasis added).

What to make of *Roberts* in light of the plurality opinions in *Brooks*? One important fact is clear: the same five judges in *Brooks*, who there purported to substitute a legal-sufficiency standard for addressing questions of fact, previously acknowledged that their "review of a direct-appeal court's factual-sufficiency decision is limited by the factual-conclusivity clause to determin-

ing only whether the direct-appeal court properly applied 'rules of law' " and treating an appellant's factual-sufficiency challenge as legal-sufficiency challenge would be "incorrect." *Id.* at 663–65 (citing *In Re King's Estate*, 244 S.W.2d at 661).

Under the doctrine of stare decisis, once "the highest court of the State *having jurisdiction*" of a matter decides a "principle, rule or proposition of law," that court and all "other courts of *lower rank*" must accept the decision as "binding precedent." *Swilley*, 374 S.W.2d at 875 (emphasis added). And the court of criminal appeals, like this Court, has an obligation to follow its own prior precedent until it expressly overrules it. *See Rose v. State*, 752 S.W.2d 529, 555 (Tex.Crim.App.1988) (Teague, J., concurring with court's opinion on motion for rehearing) (until case is expressly overruled, it must be followed); *see also Murchison v. State*, 93 S.W.3d 239, 262 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd) ("Because there is no majority opinion . . ., [the plurality] is not binding precedent."). Here, it is important to note that although the plurality in *Brooks* purported to change the standard of review for fact questions to a legal standard, expressly overruling *Clewis* in that regard, it did not address (1) the jurisdictional issue squarely presented in this case, (2) the now apparent inconsistency between what the plurality said in *Brooks* about that standard and the factual-conclusivity clause's limitation on the court's jurisdiction to address the issue, (3) the inconsistency between what the plurality said in *Brooks* about that standard and the court's own precedent in regard to its very limited jurisdiction in regard to our conclusive fact jurisdiction, and (4) the inconsistency between what the same five judges in the plurality said in *Brooks* about that standard and what they said in *Roberts*. Accordingly, although this Court is bound by its precedent in *Ervin*, it is not bound by

*Brooks* in addressing the serious jurisdictional and consequent constitutional issues now asserted by appellant in the instant case.

Regardless, under the factual-conclusivity clause, a Texas court of appeals, in regard to its decisions on the questions of fact presented to it, is not a court of rank "lower" than either the supreme court or the court of criminal appeals because the courts of appeals have conclusive, exclusive, and final authority over such questions of fact. As previously recognized by the court of criminal appeals, the factual-conclusivity clause gives "final appellate jurisdiction to the courts of appeals on questions of fact brought before" them. *Laster*, 275 S.W.3d at 518–19. As specifically recognized by the five judges in the plurality in *Brooks*, the court of criminal appeals' "review of a direct-appeal court's factual-sufficiency decision is limited by the factual-conclusivity clause to determining only whether the direct-appeal court properly applied 'rules of law' " and treating an appellant's factual-sufficiency challenge as legal-sufficiency challenge would be "incorrect." *Roberts*, 221 S.W.3d at 663–65 (citing *In Re King's Estate*, 244 S.W.2d at 661) (emphasis added). And neither the supreme court nor the court of criminal appeals has any jurisdiction to create a factual-sufficiency appellate standard of review "in conflict" with the Texas Constitution, i.e., any standard that would eliminate or in any way interfere with the exclusive authority of the courts of appeals to actually decide the questions of fact presented to them by considering and weighing all the evidence in a trial record. *Ex parte Schuessler*, 846 S.W.2d at 852; *Meraz*, 785 S.W.2d at 152; *see also Pool*, 715 S.W.2d at 633–35; *In re King's Estate*, 244 S.W.2d at 661–62. Again, as acknowledged by the court of criminal appeals itself, it simply may not "interfere[ ] with

the fact jurisdiction of the intermediate appellate courts" and it is "not constitutionally authorized to adopt a standard of review for the court[s] of appeals ... *inconsistent* with Art. V, § 6 of [the Texas] Constitution." *Ex parte Schuessler*, 846 S.W.2d at 852–53 (emphasis added) (quoting *Meraz*, 785 S.W.2d at 153). Any such action taken by the court of criminal appeals is, in its own words, "void *ab initio*," i.e., from its inception. *Id.* Thus, the doctrine of stare decisis does not bind a Texas court of appeals to apply such an invalid, unconstitutional, appellate standard of review in fulfilling its Texas constitutional and statutory obligation to address questions of fact.

Our constitutional and statutory duty to address appellant's question of fact as a question of fact is not relieved just because doing so would be awkward given the plurality opinions in *Brooks* or because of the fact that Texas' judicial structure is a "jurisdictional mishmash 'unimaginably abstruse.'" *See In re Reece*, 341 S.W.3d at 382 (Willett, J., concurring). Indeed, we have a duty to protect our jurisdiction:

> Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants.

*Pittsburgh–Corning Corp. v. Askewe*, 823 S.W.2d 759, 761 (Tex.App.-Texarkana 1992, no writ) (quoting *Laker Airways v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927, 930–31 (D.C.Cir.1984)).

The bottom line is that applying a legal-sufficiency standard to appellant's question of fact deprives him of his Texas constitu-

tional and statutory right to present this Court with such a question and the remedy of having his case remanded for a new trial if he prevails on his question of fact. Once a state provides an appellate remedy to a defendant in its constitution or by statute, a court may not circumvent the constitution or statute to deprive him of the remedy. *See Griffin*, 351 U.S. at 18, 76 S.Ct. at 590; *M.L.B.*, 519 U.S. at 110–11, 117 S.Ct. at 561. Such an action by a court amounts to a denial of due process of law. *See M.L.B.*, 519 U.S. at 111, 117 S.Ct. at 561. Here, moreover, given that the Texas Supreme Court, in reading article V, section 6 of the Texas Constitution, clearly recognizes the right of civil litigants to present intermediate courts of appeals with questions of fact and the remedy of a remand for a new trial, the denial of that right, given that article V, section 6 is not in any way limited to civil cases, amounts to a denial of the equal protection of the laws. *See* U.S. CONST. amend. XIV. "There is no sound basis for the disparate interpretations of a single constitutional provision based on whether the matter on appeal is civil or criminal in nature."[3] Susan Bleil & Charles Bleil, *The Court of Criminal Appeals Versus the Constitution: The Conclusivity Question*, 23 ST. MARY's L.J. 423, 424 (1991).

Although Texas' courts of appeals have only rarely found evidence factually insufficient to support criminal convictions or findings in civil cases, the right of a litigant in a civil case or a defendant in a criminal case to assert a question of fact on appeal and request a remand for a new

---

**3.** In construing the plain language of article V, section 6, the Texas Supreme Court has clearly stated that Texas' courts of appeals commit reversible error in applying a legal-sufficiency standard of review to answer questions of fact. *In Re King's Estate*, 244 S.W.2d at 661. Yet, the Texas Court of Criminal Appeals has now said that the same courts

commit reversible error if they do not. *See Brooks v. State*, 323 S.W.3d 893, 901 (Tex. Crim.App.2010) (Hervey, J., joined by Keller, J., Keasler, J., and Cochran, J.); *see id.* at 912–26 (Cochran, J., joined by Womack, J., concurring). Respectfully, the court of criminal appeals' disparate interpretation of article V, section 6 is untenable.

trial is critical and in no way interferes with the right to trial by jury. As explained by former Texas Supreme Court Chief Justice Tom Phillips:

> Appellate courts have the authority to review the sufficiency of evidence in support of the fact finder's determinations for one reason: *to undo the effect of an unjust trial. See generally,* Garwood, *The Question of Insufficient Evidence on Appeal,* 30 Tex. L.Rev. 803, 809 (1952). This traditional judicial function, now exercised only by our intermediate appellate courts, neither conflicts with nor infringes upon the right of trial by jury. No appeals court in Texas has ever been given, or has ever exercised, the authority to *find* any fact. *The extent of an appellate court's power is, as it has always been, to remand for new trial if more than a scintilla of probative evidence exists to support the result reached by the jury.*
>
> This authority exists regardless of whether the court of appeals is reviewing a jury's finding or its "non-finding," that is, the failure of a jury to find a fact. *In either case, the court is not substituting its own finding for the jury's; it is merely ordering a new trial before another jury for a new determination.*
>
> *The court of appeals must have this authority in order to do justice.* Trials may be just as unfair when the party with the burden of proof unjustly loses as when the party with the burden of proof unjustly wins. To *fulfill its constitutional responsibilities,* the court of appeals must have authority to review both findings and non-findings. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex. 1973).

*Herbert v. Herbert,* 754 S.W.2d 141, 145 (Tex.1988) (Phillips, C.J., concurring) (emphasis added).

The substitution of a legal-sufficiency appellate standard of review, which can be reviewed and applied, respectively, by either the Texas Supreme Court or Texas Court of Criminal Appeals, for a factual-sufficiency appellate standard of review, which constitutionally may not be reviewed and applied by the higher courts, would render the factual-conclusivity clause of the Texas Constitution a dead letter. *See Ex parte Schuessler,* 846 S.W.2d at 852. As explained by the Texas Supreme Court:

> [The factual-conclusivity clause] requires the [c]ourt of . . . [a]ppeals, upon proper assignment, to consider the fact question of weight and preponderance of all the evidence and to order or deny a new trial accordingly as to the verdict may thus appear to it clearly unjust or otherwise. *This is the meaning* given the constitutional phrase 'all questions of fact brought before them on appeal or error'. . . . *But for that interpretation there would be no 'questions of fact' for the [c]ourt of . . . [a]ppeals to determine* . . . .

*In re King's Estate,* 244 S.W.2d at 662 (emphasis added). Again, in the words of the Texas Court of Criminal Appeals:

> It [is] not appropriate for this Court to create a standard of review which is in conflict with the language of our State Constitution.

*Meraz,* 785 S.W.2d at 152. Respectfully, this is precisely what a majority of the Texas Court of Criminal Appeals purports to do in its plurality and concurring opinions in *Brooks.* As noted by the dissenting judges, the majority, without at all considering and addressing the express language of the factual-conclusivity clause and article 44.25 of the Texas Code of Criminal Procedure, "purports" to overrule *Clewis,* deciding that the authority to reverse criminal judgments and remand the cases on the basis of factual insufficien-

cy, which "has been recognized from the beginning to be inherent in the appellate jurisdiction of first-tier appellate courts in Texas," "need not be 'retained.'" *Brooks*, 323 S.W.3d at 926 (Price, J., dissenting). Such a dramatic change of the constitutionally-delineated conclusive fact jurisdiction of Texas' courts of appeals cannot be made "absent a change in the constitutional and statutory provisions that confer that jurisdiction" on the courts of appeal. *Id.* at 927. As previously noted by the court itself, if it is "improper" for the courts of appeals to decide questions of fact and remand cases for a new trial, "it is up to the people of the State of Texas to amend the Constitution." *Meraz*, 785 S.W.2d at 154. It would also be up to the Texas Legislature to amend article 44.25.

In sum, under Texas' unique judicial structure, the Texas Constitution expressly recognizes that Texas courts of appeals have "conclusive" jurisdiction to decide the questions of fact presented to them on appeal; this "conclusive fact jurisdiction," this constitutional responsibility, by its very nature requires that a court of appeals consider and weigh all the evidence in a case when a question of fact is presented to it on appeal and, if appropriate, to remand the case for a new trial. Neither the Texas Supreme Court nor the Texas Court of Criminal Appeals may lawfully amend the Texas Constitution to usurp the constitutional responsibility of the Texas courts of appeals to properly review and decide the questions of fact presented to them on appeal. A Texas court of appeals is duty bound under the Texas Constitution to protect its conclusive jurisdiction and exercise the full extent of its appellate powers on the questions of fact brought before it on appeal, and neither the Texas Supreme Court nor the Texas Court of Criminal Appeals has the lawful authority to interfere with or relieve the courts of appeals of this constitutional

duty. Any attempt by either court to do so is void *ab initio*. *Ex parte Schuessler*, 846 S.W.2d at 852.

Here, appellant has squarely presented a question of fact to this Court, contending that the evidence in support of his conviction is so weak that the jury's verdict is clearly wrong and manifestly unjust. He has also squarely asserted that our failure to perform our constitutional and statutory duty to address his question of fact as a question of fact constitutes a denial of due process of law, and it also violates his right to the equal protection of the laws. *See* U.S. CONST. amends. V, XIV. Although awkward under the circumstances, this Court still has a constitutionally-delineated right and duty, with which no other court may lawfully interfere, to properly address appellant's question of fact by considering and weighing all the evidence in record. Accordingly, this Court should overrule *Ervin* and address appellant's question of fact as a question of fact and not as a question of law.

The People of the State of Texas have the exclusive authority to amend the Texas Constitution. Until they do so, "[t]he right of [Texas] courts of appeals to review for factual insufficiency *must continue undisturbed.*" *Pool*, 715 S.W.2d at 634 (emphasis added). And, here, the failure to address appellant's question of fact constitutes a violation of the United States Constitution's guarantees of due process of law and the equal protection of the laws. *See* U.S. CONST. amends. V, XIV; *Griffin*, 351 U.S. at 18, 76 S.Ct. 585 at 590, 100 L.Ed. 891.