# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00138-CR

---

**Danielle Leigh Edwards, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
NO. 18-217, THE HONORABLE CHRIS SCHNEIDER, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Danielle Leigh Edwards was convicted of the offense of injury to a child and sentenced to twelve years' imprisonment. *See* Tex. Penal Code §§ 12.33, 22.04. On appeal, Edwards asserts that the evidence presented at trial was insufficient to support her conviction. We will affirm the trial court's judgment of conviction.

### BACKGROUND

At the time relevant to this appeal, Edwards was living with her husband and was raising her approximately one-year-old daughter L.B. After the Department of Family and Protective Services ("Department") initiated an investigation involving Edwards, a hair sample from L.B. was subjected to drug testing, which revealed a positive result for the presence of cocaine as well as cocaine metabolites that are produced when cocaine is broken down in the body. As part of the Department's investigation, Edwards filled out and signed a form

acknowledging that she had tested positive for cocaine and listing six days in the prior ten-day period in which she had used cocaine. Edwards was later charged with injury to a child for causing L.B. to suffer serious mental deficiency, impairment, or injury by allowing her to ingest cocaine.

At trial, the form mentioned above was admitted as an exhibit during a Department employee's testimony. In addition, a laboratory manager for the company that performed the drug testing on L.B.'s hair testified regarding those testing results. Further, Edwards's husband related that although he and another adult lived in the home with Edwards and L.B., Edwards was L.B.'s primary caregiver and was nursing L.B. Moreover, Edwards's husband denied consuming cocaine or giving L.B. cocaine. Additionally, the person who became L.B.'s guardian after L.B. was removed from Edwards's home testified that a doctor described L.B. as being small for her age, that L.B. was "clingy" and "fussy," and that testing performed on L.B. showed that she was not suffering any developmental delays at the time of the testing. Finally, Bruce Jefferies testified that he owns a company that performs drug testing and that he regularly testifies at trials as an expert witness regarding drug testing and drug testing results. Jefferies discussed the drug testing results in this case, explained that L.B.'s hair sample results showed the presence of a high concentration of cocaine and cocaine metabolites, and discussed the physical and mental effects that occur from consuming cocaine.

After considering the evidence presented at trial, the jury found Edwards guilty of injury to a child. Edwards appeals the trial court's judgment of conviction.

**STANDARD OF REVIEW**

In this case, Edwards challenges the sufficiency of the evidence supporting her conviction for injury to a child. "Evidence is sufficient to support a criminal conviction if a

2

rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id*. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id*. "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id*., and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried."

*See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the terms of the Penal Code, a person commits the offense of injury to a child if she "intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." Tex. Penal Code § 22.04. In this case, the indictment alleged that Edwards committed the offense of injury to a child by recklessly causing "serious mental deficiency, impairment, or injury" to her daughter L.B. by allowing L.B. to access and ingest cocaine.

## DISCUSSION

In one issue on appeal, Edwards challenges the sufficiency of the evidence supporting her conviction. When presenting this issue, Edwards does not argue that the evidence is insufficient to support a conclusion that she consumed cocaine while she was breastfeeding L.B. or that L.B. ingested cocaine while nursing; instead, Edwards argues that there was no evidence of any "mental deficiency, injury or impairment to L.B." due to the ingestion of the cocaine.

The Penal Code does not define the phrase "serious mental deficiency, impairment, or injury." "[U]ndefined terms in a statute are to be given their plain and ordinary meaning." *Gerron v. State*, 524 S.W.3d 308, 316 (Tex. App.—Waco 2016, pet. ref'd); *see Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). Reviewing courts "may consult standard or legal dictionaries in determining the fair, objective meaning of undefined statutory terms." *Watkins v. State*, 619 S.W.3d 265, 272-73 (Tex. Crim. App. 2021).

4

Recently, one of our sister courts of appeals explained that the phrase found in subsection 22.04(a)(2) has a plain and ordinary meaning. *See Ex parte Hammons*, No. 10-19-00362-CR, __ S.W.3d __, 2021 WL 2253969, at \*1-2 (Tex. App.—Waco May 26, 2021, no pet. h.). Specifically, our sister court observed that the term "[m]ental has an ordinary meaning" and "is commonly understood to refer to the mind." *Id.* at \*1. Further, the court explained that "deficiency" means "the quality or state of being defective or of lacking some necessary quality or element." *Id.* (quoting Webster's Collegiate Dictionary (10th Ed. 1993)); *see also Mental Deficiency*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/mental%20deficiency (last visited June 29, 2021) (defining "mental deficiency" as meaning "a deficiency in cognitive functioning"). The court also stated that "injury" has been defined as meaning "hurt, damage, or loss sustained." *Ex parte Hammons*, 2021 WL 2253969, at \*1 (quoting Webster's Collegiate Dictionary (10th Ed. 1993)); *see also Mental Injury*, Law Insider, https://www.lawinsider.com/dictionary/mental-injury (last visited June 29, 2021) (defining "[m]ental injury" as "the observable, identifiable, and substantial impairment of a child's mental or psychological ability to function"). Regarding the word "impairment," the court explained that the word means "diminishment or loss of function or ability." *Ex parte Hammons*, 2021 WL 2253969, at \*1; *see also Mental Impairment*, Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/mental-impairment (last visited June 29 2021) (defining "[m]ental impairment" as meaning "a state of arrested or incomplete development of mind"). Finally, the court stated that the word "serious" in this context "is commonly understood to require a heightened or excessive level of the deficiency, impairment, or injury." *Ex parte Hammons*, 2021 WL 2253969, at \*2; *see also* Black's Law Dictionary 1101 (6th

abridged ed. 2000) (stating that "serious" as it relates to injuries means "dangerous; potentially resulting in death or other severe consequences").

Although other courts have not further defined the phrase or commented on its plain meaning, some courts have addressed what type of injury would qualify as a serious mental deficiency, impairment, or injury. For example, the Court of Criminal Appeals assumed for the sake of argument that testimony demonstrating that trauma caused a child to suffer from post-traumatic stress disorder was sufficient to "establish serious mental deficiency, impairment, or injury." *Stuhler v. State*, 218 S.W.3d 706, 712-13 (Tex. Crim. App. 2007). Following that decision, at least one of our sister courts of appeals has determined that evidence showing that acts of abuse caused a child to suffer from post-traumatic stress disorder was sufficient to establish that the defendant caused the child to suffer a mental deficiency, impairment, or injury under section 22.04 of the Penal Code. *See Franco v. State*, No. 13-14-00108-CR, 2016 WL 3389967, at *7 (Tex. App.—Corpus Christi June 16, 2016, no pet.) (mem. op., not designated for publication).

With the preceding in mind, we now turn to the evidence in this case to determine whether it was sufficient to establish that L.B. suffered a "serious mental deficiency, impairment, or injury." *See* Tex. Penal Code § 22.04(a). At trial, evidence was presented indicating that Edwards was the primary caregiver for her one-year-old daughter L.B. and that she was breastfeeding L.B. before L.B. was removed from her custody. In addition, Edwards filled out a form documenting that she had tested positive for cocaine around the time that L.B. was removed from her home and that she had regularly consumed cocaine in the days leading up to the drug testing. In addition, testing performed on a sample of L.B.'s hair revealed the presence of cocaine and cocaine metabolites that are produced inside the human body when cocaine is

6

broken down. The testing produced a result that exceeded the maximum 20,000 picograms per milligram of cocaine that the test was designed to detect, and the estimated value of the actual concentration of cocaine was almost double the maximum test value.

When discussing the results of the testing, Jefferies testified that the results showed that L.B. "had a serious issue with ingestion of cocaine and its metabolites," that the level of cocaine present in the sample "shocked" him because it was so high, that the results were "indicative of an addict that's doing it all the time which is going to cause . . . withdrawals," and that ingestion of that amount of cocaine would lead to "loss of appetite" and "psychological effects" because cocaine attacks the nervous system. Moreover, Jeffries related that ingestion of that amount of cocaine could cause seizures and other brain disorders and could cause physical and mental developmental delays. Although L.B.'s guardian explained that testing on L.B. did not indicate that she was suffering from any developmental delays, she did not specify whether she was referring to physical or mental developmental delays or discuss what type of testing had been done, but the guardian did testify that L.B. was "very clingy, very fussy" and that a doctor described L.B. as being small for her age.

Viewing the evidence in the light most favorable to Edwards's conviction, the jury could have reasonably inferred that L.B. had ingested an amount of cocaine sufficient to make her addicted and that she experienced withdrawal symptoms after having been removed from Edwards's custody. *See Jackson*, 443 U.S. at 319 (explaining that sufficiency review considers whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Similarly to how courts have determined that evidence that a child suffered from post-traumatic stress disorder established that the child suffered from the type of deficiency, impairment, or injury contemplated by the Penal Code, *see Franco*,

7

2016 WL 3389967, at *7, we believe that the evidence in this case demonstrating that L.B. became addicted to cocaine and experienced withdrawal is sufficient to establish that L.B. suffered from a serious mental deficiency, impairment, or injury, *see* Tex. Penal Code § 22.04(a); *see also* National Institute on Drug Abuse, https://www.drugabuse.gov/publications/media-guide/science-drug-use-addiction-basics (last visited May 20, 2021) (defining drug addiction "as a chronic, relapsing disorder characterized by compulsive drug seeking . . . and long-lasting changes in the brain"); *Tarr v. Lantana Sw. Homeowners' Ass'n, Inc.*, No. 03-14-00714-CV, 2016 WL 7335861, at *4 (Tex. App.—Austin Dec. 16, 2016) (mem. op.) (recognizing that courts have determined that "drug addiction constitute[s] an 'impairment'"), *judgment withdrawn, appeal dismissed*, No. 03-14-00714-CV, 2017 WL 1228870 (Tex. App.—Austin Mar. 30, 2017, no pet.) (mem. op.).

Accordingly, we believe that a reasonable jury could have determined that Edwards recklessly caused L.B. to ingest an amount of cocaine sufficient to make her addicted and experience withdrawal and, therefore, caused L.B. to suffer a serious mental deficiency, impairment, or injury. *See id.* For these reasons, we conclude that the evidence was sufficient to support Edwards's conviction for injury to a child and, therefore, overrule her issue on appeal.

## CONCLUSION

Having overruled Edwards's issue on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed:   July 1, 2021

Do Not Publish