# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00802-CR

---

**David Ross Guerrero, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 22ND DISTRICT COURT OF HAYS COUNTY**
**NO. CR-19-1828-A, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

David Ross Guerrero was charged with and convicted of three counts of sexually assaulting A.M.,[1] who was a child younger than seventeen years old at the time of the alleged offenses. *See* Tex. Penal Code § 22.011(a)(2), (c)(1). At the conclusion of the trial, Guerrero was sentenced to two-and-a-half years' imprisonment for the first count and placed on community supervision for ten years for the other two counts. *See id.* § 12.33. On appeal, Guerrero challenges the sufficiency of the evidence supporting his convictions. We will affirm the trial court's judgments of conviction.

## BACKGROUND

In November 2018, A.M. went to the San Marcos Police Station to report that her former high school English teacher, Guerrero, had sexually assaulted her when she was a student.

---

[1] Because the complainant was a minor when the alleged offenses occurred, we will refer to her using a pseudonym. *See* Tex. R. App. P. 9.10 (defining sensitive information).

During her recorded conversation with a police officer, A.M. related that she was twenty-six years old at the time of the interview and that the assaults occurred when she was sixteen during the summer between her junior and senior years in high school. A.M. stated that the first assault occurred in mid-June after Guerrero offered to give her a ride from work and took her to his one-bedroom apartment.

When describing the assault, A.M. recalled that Guerrero took her to his bedroom and penetrated her vagina with his penis. Further, A.M. stated that Guerrero assaulted her in the same manner six times between mid-June and the end of July. Additionally, A.M. related that the sexual activity stopped in July and that nothing sexual occurred after that time. While at the station, A.M. made a written statement in which she related that she had a sexual relationship with Guerrero during the summer between her junior and senior years and that they had sexual intercourse approximately six times.

During her conversation with the police officer, A.M. communicated to the officer that she had been willing to give Guerrero the "benefit of the doubt" and not report the incidents because he had gotten married and had children. However, A.M. explained that she changed her mind after Guerrero recently started following her on social media and communicated in online messages to her that he did not believe that he had done anything wrong. Additionally, she explained that she wanted to press charges to prevent him from abusing someone else and was worried that it may have happened to others. Towards the end of the interview, the officer stepped out for a moment, and when he returned, he explained to A.M. that Guerrero could not be charged with having an improper relationship with a student because the statute of limitations had passed but explained that Guerrero could be charged with sexual assault of a child.

2

While talking with the officer, A.M. showed the officer an exchange between her social-media account and one purporting to be Guerrero's account. The profile for the account allegedly belonging to Guerrero had a photo of the user, who A.M. said she recognized as being Guerrero. In the exchange, A.M. asked Guerrero why he had recently started following her content on social media, and the following messages were sent:

[Guerrero]: Hahahaha

[Guerrero]: Why not tho?

[A.M.]: Because we used to sleep with each other when I was in high school and you have a wife and kids now.

[Guerrero]: That was a loooong time ago.

. . . .

[A.M.]: So you don't think this is inappropriate considering our past?

[Guerrero]: Being married for 7 years and having moved to a different state, I didn't even think of it that way, but if you do, that's all that matters.

[Guerrero]: Sorry for whatever negative emotions it made you feel. Didn't mean for it to at all. I understand.

[A.M.]: It was mainly confusing. You were my teacher and I slept with you when I was in high school. You have a daughter. It doesn't make sense why you would think it's ok to follow or watch me when you probably wouldn't want your child making the same decisions.

[A.M.]: I also don't think your wife would like it very much so that made me wonder why.

[Guerrero]: My daughter is 5 and can and will make her own decisions when she's ready to. I honestly wasn't thinking of it that way at all with it being so long ago. But again, if you don't think it's appropriate or makes sense, then it doesn't matter what my intentions were. Don't want to make you confused or uncomfortable.

[A.M.]: Does your wife know?

. . . .

[Guerrero]: My wife knows I follow old students and friends and doesn't know

3

about relationships that happened before her[.]

. . . .

[Guerrero]: I don't think she'd be offended but she probably wouldn't like that we did when you were in hs[.]

In the exchange, Guerrero also mentioned that he did not want to mention to his wife "something from 10 (??) years ago."

After A.M. went to the station, a police officer reached out to Guerrero to see if he wanted to make a statement, and the officer recorded the phone call. During the phone call, Guerrero admitted that he taught A.M. when she was a junior, that he remained in contact with her after the end of her junior year, and that she wanted "a more serious relationship" with him. Further, he admitted to talking with A.M. through social media after A.M. sent him a message a few months earlier. He described A.M. as being upset that he was still around in her life and said he unfollowed her for that reason. When the officer asked Guerrero if he had a romantic relationship with A.M., he responded by saying that he did not want to implicate himself because he did not "know what sort of evidence or proof of this she could possibly have." Subsequently, the officer located and arrested Guerrero, and he was charged with three counts of sexual assault of a child for acts occurring in June and July of 2009.

During the trial, the State called several witnesses to the stand, including the following: A.M., the police officer who talked with A.M. and recorded their conversation, the police officer who recorded a conversation with Guerrero, A.M.'s therapist, the property manager for the apartment where Guerrero had rented an apartment during the time of the alleged offenses, and the principal of the high school where Guerrero taught and where A.M. was a student. In addition, the following were admitted as exhibits: the social-media exchanges between A.M. and

Guerrero, a recording of the conversation between A.M. and a police officer, a copy of A.M.'s written statement to the police, a recording of the phone call between a police officer and Guerrero, copies of rent checks written by Guerrero to his apartment complex, his employment record with the high school, and A.M.'s school record.

In her testimony, A.M. stated that she was born in mid-August 1992, that she was sixteen during the summer between her junior and senior years, and that she did not turn seventeen until mid-August 2009. Further, she explained that during the summer between her junior and senior years, Guerrero offered to pick her up from work and "help me feel better" and then drove her to his apartment. She described the apartment as having one-bedroom and said that she did not believe Guerrero was living with anyone, but she admitted that it was possible that there was an additional bedroom there that she did not see.

Additionally, she recalled that they started kissing while inside his apartment, that they went to his bedroom, and that he inserted his penis into her vagina. Moreover, she testified that they had vaginal intercourse approximately once a week at his apartment in June and July of the summer between her junior and senior years and that she was sixteen years old when those incidents occurred. Next, she related that no other sexual acts occurred after the end of July 2009 because she started dating someone in August 2009. Further, she explained that she also had chosen to distance herself from Guerrero after he asked her to see if any of her friends would be interested in participating in a threesome. Further, A.M. explained that the social-media account purporting to be Guerrero's had photos of him in the profile.

In her testimony, A.M. explained that any reference by her or others to the sexual activity occurring ten years before she gave her statement to the police was incorrect because the incidents occurred in 2009 rather than 2008. During her cross-examination, A.M. testified that

5

one of the officers involved in the case informed her that Guerrero could not be charged with having an improper relationship with a student because the statute of limitations for that charge had run, and she admitted that she understood that he could not have been charged with sexual assault if the incidents occurred after she turned seventeen. Further, A.M. testified that she started seeing a therapist a few months before making a statement to the police and that she told her therapist that she was unsure if she wanted to pursue charges.

The officer who recorded A.M.'s statement testified that he spoke with A.M. in November 2018 and that based on what was disclosed during that conversation, he assumed that the sexual activity occurred in 2008 and wrote that year in his report. However, the officer explained that A.M. never specified a particular year and noted instead that A.M. consistently stated that the offenses occurred between her junior and senior years and that she was sixteen at that time.

A.M.'s therapist testified that A.M. became one of her patients in October 2018 and that A.M. sought out therapy to discuss how to make peace with sexual assaults that happened ten years earlier. Further, the therapist explained that she reasoned that the assaults occurred in 2008. The therapist related that A.M. never mentioned a particular year but did say that she was sixteen when the assaults occurred. The therapist mentioned that in her notes she wrote that A.M. had seen a counselor when she was a teenager and that A.M. related that the prior therapy "was not helpful" because A.M. "believed the problem was not fixable because [A.M.] could not be honest." The therapist explained that she did not mean to suggest that A.M. was not being honest but was instead documenting that A.M. did not feel she could have been honest with the therapist she saw as a teenager.

6

The officer who arrested Guerrero testified that the initial information that he received indicated that the offense occurred in June and July of 2008, but he also explained that Guerrero's employment records showed that he did not start working for the high school until August 2008. Further, the officer related that Guerrero paid utilities for an apartment in San Marcos during the summer of 2009. The property manager for the apartment complex related that Guerrero rented a two-bedroom apartment in May through July of 2009, that he transferred to a one-bedroom apartment in August 2009, and accordingly, that he was not paying rent for a one-bedroom apartment prior to August 2009. The principal for the school where Guerrero worked testified that he started working for the high school in August 2008, that A.M. started her junior year in the fall of 2008, that the summer period between A.M.'s junior and senior years was June through August of 2009, and that A.M. turned seventeen in mid-August 2009.

During his case-in-chief, Guerrero called the following witnesses: his younger brother ("Brother"), his father ("Father"), and a forensic psychologist. Brother and Father both testified that they went on a road trip with Guerrero in June 2009, that the three of them returned to San Antonio in June 2009, and that he lived at his mother's house in San Antonio with Brother for the remainder of the summer before moving to San Marcos in August 2009. Brother explained that the apartment that Guerrero moved into in August 2009 had one bedroom and that his prior apartment in San Marcos had two bedrooms. During his cross-examination, Brother admitted that he could not say for certain that Guerrero never left their mother's house at night and added that Guerrero had access to a vehicle. Similarly, Father admitted in his cross-examination that he did not see Guerrero every day during that summer and did not live with Guerrero that summer because Father had previously divorced his children's mother. The psychologist explained that a person who regretted a relationship that she had when she was seventeen might make a complaint as an

7

adult that could be similar to delayed outcries made by individuals who have been sexually assaulted as children.

After considering the evidence, the jury found Guerrero guilty of the three counts of sexual assault of a child. Following a punishment hearing, the trial court rendered its judgments of conviction. Guerrero appeals his convictions.

## STANDARD OF REVIEW AND GOVERNING LAW

In a single issue on appeal, Guerrero challenges the sufficiency of the evidence supporting his convictions for sexual assault of a child. Under the Penal Code, an individual commits that offense if he "causes the penetration of the . . . sexual organ of a child by any means." Tex. Penal Code § 22.011(a)(2)(A). For purposes of that statute, the term "'[c]hild' means a person younger than 17 years of age." *Id.* § 22.011(c)(1).

When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). In making this determination, "[w]e . . . consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). A jury "may choose to believe or disbelieve all, some, or none of the evidence presented." *Edward v. State*, 635 S.W.3d 649, 655

(Tex. Crim. App. 2021). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

## DISCUSSION

In presenting his sufficiency claim, Guerrero limits his challenge to the evidence regarding A.M.'s age at the time of the alleged offenses. More specifically, he contends that the evidence presented at trial was insufficient to convict him of sexual assault of a child because it did not establish that A.M. was younger than seventeen at the time of the alleged offenses.

When challenging the sufficiency of the evidence, Guerrero highlights the portion of the testimony from one of the police officers in which he explained that he filled out a report and other paperwork documenting that the assaults occurred in the summer of 2008 and points to testimony from A.M.'s therapist in which the therapist explained that she discussed with A.M. assaults that occurred in 2008, ten years before the therapy began. But Guerrero notes that other

9

evidence at trial indicated that he did not even start working for the school district until August 2008 and did not teach A.M. until after being employed at the high school. Next, he suggests that A.M. was inconsistent about the dates in question and as support refences the part of A.M.'s testimony in which she explained that any statement or report by her or the police officers involved in the case suggesting that the abuse occurred in 2008 rather than 2009 was incorrect.

Further, Guerrero notes that A.M. testified that the assaults occurred in his one-bedroom apartment but that the testimony from other witnesses and other evidence established that he did not have a one-bedroom apartment until after the alleged sexual activity had stopped. Additionally, he references the portion of A.M.'s testimony in which she stated that she was aware that the statute governing sexual assault of a child requires that the victim be under the age of seventeen at the time of the offense. He claims that A.M.'s therapist testified that A.M. admitted to not being honest and emphasizes that A.M. told her therapist and the officer to whom she gave her statement that she was unsure about whether to pursue charges. Next, he points out that his expert witness testified that an individual could make complaints about legal relationships years afterwards based on regrets they ended up having about the relationship and suggests that this occurred in this case because A.M. started regretting her decision to have a relationship with him after he asked to have a threesome with her and one of her friends.

Guerrero insists that the only rational conclusion that could be made from the evidence was that A.M. "created an artificial timeline" to give the impression that she was younger than seventeen when the alleged assaults occurred. Accordingly, he suggests that the jury's determination that she was sixteen at the relevant time despite the evidence he highlights above was irrational and improper. For these reasons, he contends that his convictions should be reversed and that he should be acquitted on all three counts.

As an initial matter, we note that A.M. repeatedly testified that Guerrero penetrated her vagina with his penis on six separate days in June and July of the summer between her junior and senior years while she was sixteen and that the incidents stopped before she turned seventeen in August of that year. Testimony from the victim of a sexual offense who was seventeen or younger at the time of the offense is sufficient to support a conviction for the offense. *See* Tex. Code Crim. Proc. art. 38.07; *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). A.M.'s testimony was consistent with her written and recorded statement to police. Moreover, Guerrero admitted during his phone call with the police that he maintained contact with A.M. after teaching her during her junior year, and he also told the police that he did not want to discuss the matter because he did not want to implicate himself and because he was not sure what evidence A.M. had. He also confirmed in his social-media messages that they had sex. *See Turner v. State*, 877 S.W.2d 513, 515 (Tex. App.—Fort Worth 1994, no pet.) (explaining that extrajudicial admission can help establish offense). Although in those messages he indicated that the sexual activity occurred ten years before the social-media exchange rather than nine years earlier as A.M. testified, sexual activity between A.M. and him at either period would constitute sexual assault of a child. *See* Tex. Penal Code § 22.011(a)(2), (c)(1) (setting out elements of sexual assault of child); *see also Lozano v. State*, __S.W. 3d__, No. 03-23-00660-CR, 2024 WL 4521934, at *22 (Tex. App.—Austin 2024, no pet.) (noting that State is not required to prove offense on date alleged in indictment and may prove that offense was committed on any date before return of indictment and within statute of limitations).

Further, in attacking the sufficiency of the evidence, Guerrero does not deny that sexual activity occurred and does not assert that there is no evidence that the sexual activity

11

occurred in June and July of 2009. Instead, he points to portions of the evidence that he argues indicate that the sexual activity occurred after A.M. turned seventeen. However, the jury was tasked with resolving any inconsistencies in the evidence and with deciding what weight to give to the testimony and other evidence presented, *Stahmann*, 602 S.W.3d at 577, and we must presume on appeal that the jury resolved any conflicts in favor of the conviction and defer to that resolution of the evidence, *Merritt*, 368 S.W.3d at 525-26; *see also Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998) (noting that "a jury is permitted to believe or disbelieve any part of a witness' testimony").

Guerrero also asserts that A.M.'s therapist said A.M. was not honest and argues that this evidence supports a conclusion that A.M. was not being honest when she told the police and later testified that the sexual activity occurred when she was sixteen. However, as with resolving inconsistencies, the jury was tasked with making credibility determinations, *Stahmann*, 602 S.W.3d at 577, and by convicting Guerrero, the jury found A.M. to be credible, *see Hiatt*, 319 S.W.3d at 121 (explaining that defendant's arguments presented in sufficiency challenge did not render evidence insufficient to support convictions for sexual assault because those claims were based on credibility determinations and conflicts in evidence); *Bargas*, 252 S.W.3d at 888-89 (noting that jury considered victim's "imperfect perception of time as to when abuse occurred," "weigh[ed] the credibility of the witnesses and the testimony," and "reconciled conflicts in the testimony" in favor of conviction).

In resolving any alleged inconsistencies in the evidence and in making credibility determinations, the jury was also aided by other evidence that Guerrero does not rely on in his sufficiency challenge. For example, in her statement to the police and in her testimony, A.M. repeatedly stated that the sexual activity occurred when she was sixteen in June and July of the

summer between her junior and senior years. The principal for the high school confirmed that A.M. would have been sixteen during those months and that Guerrero worked for the high school at that time. Although A.M. said that she believed Guerrero had a one-bedroom apartment during the relevant period, she also clarified in her testimony that she could have been mistaken about the number of bedrooms in the apartment. Father and Brother testified that Guerrero was either on a road trip or living in San Antonio at the relevant time, but they admitted that they were not with him all the time, and the property manager confirmed that Guerrero was paying to rent an apartment during the summer of 2009.

Further, the officer who took A.M.'s statement admitted that his notation in his report that the offense occurred in 2008 was based on an assumption that he made from A.M.'s statement and the social-media exchanges that she showed him, and he clarified that A.M. consistently told him that the offenses occurred when she was sixteen between her junior and senior years. Likewise, although A.M.'s therapist testified that she thought the assaults occurred in 2008, the therapist also related that A.M. never specified a year in which the offenses occurred and instead stated that the incidents occurred when she was sixteen. The therapist explained that her notes concerning A.M.'s honesty were made in the context of explaining how A.M. had been to counseling as a teenager but did not find it helpful because she could not be honest with that counselor. A.M.'s therapist did not indicate that A.M. was not being truthful about the allegations that she made against Guerrero. When A.M.'s therapist testified that A.M. entered therapy in part to discuss whether to pursue charges, the therapist did not assert that A.M. expressed doubts about the assaults' having occurred. Further, when talking with the officer taking her statement, A.M. clarified that her hesitancy in pursuing the charges was due to Guerrero's having a family, and she did not assert that she had any doubt about the assaults' having occurred.

13

Additionally, although A.M. acknowledged that she had been informed by a police officer that Guerrero could not be charged with having an improper relationship because of the passage of the statute of limitations and that she understood that he could not have been charged with sexual assault if the incidents occurred after she turned seventeen, the recording of A.M.'s conversation with the police officer revealed that there was no discussion regarding any statute of limitations or the age requirement for a sexual-assault charge until after A.M. had repeatedly and consistently informed the officer that the sexual activity occurred when she was sixteen. From this recording and A.M.'s testimony, the jury could have reasonably inferred that A.M. did not learn how any statute of limitations or her age might bear on the case until after she had already told the police her age at the time of the sexual activity. *See Eustis*, 191 S.W.3d at 884; *see also Brickley v. State*, 623 S.W.3d 68, 77 (Tex. App.—Austin 2021, pet. ref'd) (explaining that jury may make inferences regarding timing of events from evidence presented at trial).

In light of the evidence presented at trial and given our standard of review, we conclude that the evidence was sufficient for a reasonable jury to conclude that A.M. was sixteen at the time of offense and to support Guerrero's convictions for sexual assault of a child. *See* Tex. Penal Code § 22.011(a)(2), (c)(1); *see also Bennet v. State*, No. 03-21-00225-CR, 2022 WL 16973692, at *9 (Tex. App.—Austin Nov. 17, 2022, pet. ref'd) (mem. op., not designated for publication) (determining that evidence was sufficient to support convictions for sexual assault of child based on victim's testimony and text messages between defendant and victim).

Accordingly, we overrule Guerrero's issue on appeal.

**CONCLUSION**

Having overruled Guerrero's issue on appeal, we affirm the trial court's judgments of conviction.

14

_____

Karin Crump, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   January 30, 2025

Do Not Publish

15