# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-00095-CR

**Sheniqua Trenay Herod, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY NO. 24-05061-3, THE HONORABLE DOUG ARNOLD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sheniqua Trenay Herod was charged with the offense of driving while intoxicated. *See* Tex. Penal Code § 49.04. Before trial, Herod filed a motion to suppress evidence obtained during the police investigation. After a hearing, the trial court denied the motion. Following that ruling, a jury convicted Herod, and she was sentenced to 100 days' confinement in county jail. On appeal, Herod contends that the evidence is insufficient to support her conviction, that the trial court erred by denying her motion to suppress, and that the trial court should have granted her two motions for a mistrial. Because we determine that sufficient evidence supports the conviction and conclude that the trial court did not err by denying Herod's motions to suppress and for a mistrial, we will affirm the trial court's judgment of conviction.

BACKGROUND

Herod was arrested and charged with driving while intoxicated. She moved to suppress the evidence obtained during the roadside investigation that ultimately led to her arrest, but the trial court heard and denied the motion on the morning the jury trial began. At trial, Texas Department of Public Safety Trooper Jason Estrada and Sergeant Paul Wright of the Williamson County Jail testified, and recordings from Trooper Estrada's body and car cameras, as well as a camera inside the jail's blood-draw room, were admitted into evidence and played for the jury, but did not include any references to Herod's prior offenses. Herod's blood-draw kit was also admitted into evidence.

The evidence presented at the suppression hearing and trial established that on October 5, 2024, Trooper Estrada pulled Herod over for driving 89 miles-per-hour in a 75-miles-per-hour speed zone on I-35 in Williamson County. Trooper Estrada testified that when he approached Herod, he noticed that Herod's eyes were "bloodshot," "red," and "glossy," and he saw an open beer container, which she was "trying to hide," in the center console of her vehicle. Trooper Estrada noted that when he asked Herod about the beer, she "said that it was her aunt's beer can" and that she "doesn't drink." Her demeanor was "nervous and hesitant." Trooper Estrada also testified that after Herod handed him her driver's license and her "probation card," "she continue[d] looking for the driver's license even though [he] already had it." Herod maintained that the other license that she was looking for was "the unexpired one," as the license she handed to Trooper Estrada was expired.

After pouring out the remaining contents of the beer can, Trooper Estrada concluded that the situation "needed to be further investigated," so he conducted three standard field-sobriety tests authorized by the National Highway Transportation and Safety Association

2

(NHTSA). Herod informed Trooper Estrada that she has sciatica, but Trooper Estrada testified that he did not "take it into account" when conducting the field-sobriety tests because "I don't know if she's telling the truth or not that she has a condition." The trial court excluded testimony about the first field-sobriety test, or the horizontal-gaze nystagmus test, on Herod's motion. As to the second field-sobriety test, or the walk-and-turn test, Trooper Estrada testified that he gave Herod the test's instructions, and she indicated that she understood them. Trooper Estrada acknowledged that he "deviated from [his] own training" by not giving instructions on the test while standing "perpendicular" to Herod, as the NHTSA manual instructs. But he testified that "slight deviations" from the NHTSA's instructions do not "invalidate the actual test" and that the "results are still reliable."

Trooper Estrada testified that Herod exhibited four clues indicating intoxication during the walk-and-turn test: "can't balance during instruction, misses heel to toe, steps off line, [and] starts too soon." In his report, Trooper Estrada also noted that Herod did not complete the correct number of steps, but when he reviewed the video of Herod completing this test during trial, Trooper Estrada acknowledged that he made a mistake in the report and confirmed that Herod did take the correct number of steps. On the third field-sobriety test, or the one-legged-stand test, Trooper Estrada saw two of four clues indicating intoxication: "puts foot down and sways while balancing." Trooper Estrada stopped the test early because Herod "couldn't comp[l]ete the test." Based on these field-sobriety tests, plus the "open container," and Herod's "slurred" speech, "red, glossy eyes," "nervousness, and hesitant answers," Trooper Estrada determined that Herod was intoxicated and arrested her.

Herod refused to give a breath or blood sample. Trooper Estrada agreed to let Herod make some phone calls and to wait for Herod's mother to arrive and pick up her car. During

3

that time, Trooper Estrada characterized her demeanor as "very sad, and she kept making comments saying that she should have kn[own] better." He also testified that Herod was "sweating," and he smelled a "strong" "odor of alcohol[ic] beverage," which indicated to him that she "had been drinking prior to the stop."

Trooper Estrada obtained a warrant for a blood sample, so Herod's blood was drawn when she and Trooper Estrada arrived at the Williamson County Jail. A video showing this encounter played during trial. The sergeant who drew Herod's blood was unavailable to testify, so Sergeant White testified as a medical supervisor. Sergeant White testified that based on his review of the video, all policies and procedures were properly followed.

The State's forensic scientist who analyzed Herod's blood sample was also unavailable to testify, so the trial court held a hearing outside the presence of the jury to determine whether the jury could hear the testimony of the technical reviewer—without the original analyst—of Herod's blood sample, who was available to testify. After the hearing, the trial court excluded that witness's testimony on Sixth Amendment grounds, which meant that the results of Herod's blood-alcohol-concentration test were not relayed to the jury. Nonetheless, the jury found Herod guilty of driving while intoxicated.

At sentencing, Herod admitted to a prior offense of driving while intoxicated with a child passenger. *See* Tex. Penal Code § 49.045. She waived a punishment hearing and agreed to a 100-day jail sentence with credit for 119 days served, and the trial court waived the imposed fine. Herod appeals.

4

**DISCUSSION**

In two issues on appeal, Herod argues that the evidence is insufficient to support her conviction and that the trial court erred by denying her motion to suppress. Herod's appellate brief also discusses the trial court's denial of her two motions for a mistrial, and we construe this challenge as her third issue on appeal. *See* Tex. R. App. P. 38.9 (briefing rules to be construed liberally).

**I.      The evidence is legally sufficient to support Herod's conviction.**

First, Herod contends that the State failed to present legally sufficient evidence of intoxication to support the conviction for driving while intoxicated. She focuses on the three field-sobriety tests and maintains that because the testimony regarding the horizontal-gaze nystagmus test was excluded by the trial court, and the one-legged stand "was unable to be completed due to [her] medical issues," "[a]ll that was left for the Trooper to surmise that [she] was intoxicated was via the walk and turn" test. Herod maintains that Trooper Estrada gave improper instructions and placed his body camera in a location that did not "ensure full video coverage" of her completing the test.

Under legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). It is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). The factfinder is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in

drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). Further, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Courts must also recognize that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

An individual commits the offense of driving while intoxicated if she "is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code § 49.04(a). Herod disputes the legal sufficiency of only the evidence establishing that she was "intoxicated." The Penal Code defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A).

Evidence presented at trial as to Herod's intoxication was that she had "bloodshot," "red," and "glossy" eyes; had slurred speech; gave "nervous and hesitant" answers; smelled like alcohol; had trouble balancing; exhibited clues of intoxication on field-sobriety tests; had an open

6

container of partially consumed alcohol in the center console of her car; and was "very sad" and commented that "she should have kn[own] better" after her arrest. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (listing "post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, [and] any admissions by the defendant concerning what, when, and how much he had been drinking" as "evidence that would logically raise an inference that the defendant was intoxicated"); *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (listing "slurred speech," "bloodshot eyes," "the odor of alcohol on the person" and "on the breath," and "unsteady balance" as evidence of intoxication); *Priego v. State*, 457 S.W.3d 565, 570 (Tex. App.—Texarkana 2015, pet. ref'd) (upholding conviction in part because evidence showed that there was partially consumed bottle of alcohol inside car and that defendant smelled like alcohol). Even if the jury wholly discounted the field-sobriety tests, in this case, the video evidence and Trooper Estrada's testimony regarding Herod's presentation and behavior would have been legally sufficient evidence upon which the jury could reasonably conclude that Herod was intoxicated. *See Zill v. State*, 355 S.W.3d 778, 785–86 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("The testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated provides sufficient support to uphold a jury verdict." (citing *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979))). The jury could have also considered Herod's refusal to submit a breath or blood specimen as evidence of her intoxication. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (refusing to submit to breath test "tends to show a consciousness of guilt"); *Zill*, 355 S.W.3d at 786 (citing Tex. Transp. Code § 724.061).

Given the standard of review in a legal-sufficiency challenge and in light of the evidence presented during trial and the reasonable inferences that the jury was free to make from

7

that evidence, we conclude that the evidence is legally sufficient to establish that Herod was driving while intoxicated. *See* Tex. Penal Code § 49.04. We overrule Herod's first issue on appeal.

**II.      The trial court did not abuse its discretion by denying Herod's motion to suppress.**

Next, Herod argues that Trooper Estrada did not have reasonable suspicion to pursue a driving-while-intoxicated investigation such that the trial court improperly denied her motion to suppress the evidence obtained by that investigation.

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *See State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). When, as here, the trial court does not make explicit findings of fact, "we review the evidence in a light

8

most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record." *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

"An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law." *Id.* at 492. "Reasonable suspicion exists if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude the person is, has been, or soon will be engaged in criminal activity." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022). "This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d at 492. Appellate courts "consider the totality of the circumstances" when determining the question of reasonable suspicion. *Id.* at 492–93.

Herod does not challenge that Trooper Estrada had reasonable suspicion to make a traffic stop, but she argues that Trooper Estrada did not have reasonable suspicion to proceed from a traffic stop to a driving-while-intoxicated investigation. She maintains that her "forgetting or not being aware" that she had her driver's license in her bag "can also be consistent with innocent activity."[1] Likewise, while Herod handed Trooper Estrada her probation card along with her driver's license, she argues that handing him the probation card was not reasonable or sufficient to lead to a driving-while-intoxicated investigation.

However, Herod's argument excludes the other circumstances that, as Trooper Estrada testified at the suppression hearing, led to his decision to elevate the traffic stop to a

---

[1] "The 'as consistent with innocent activity as with criminal activity' construct is no longer a viable test for determining reasonable suspicion." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

9

driving-while-intoxicated investigation. For example, Trooper Estrada testified that his suspicion was first raised as to Herod's intoxication when she handed him her probation card and when he noticed "the open container in the center console." But he also testified that her demeanor was "hesitant and nervous," that she stated that "she was not drinking," that she had "bloodshot, red eyes," "slurred" and "stuttered" speech, and that she was "giving different answers" to his questions.

Here, the suppression determination largely turned on Trooper Estrada's credibility, and we must defer to the trial court's implied finding that he was credible, which is supported by the record. *See Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019) ("A trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor are afforded almost total deference if they are reasonably supported by the record."). The record supports an implied finding that Herod's actions, speech, and presentation provided specific, articulable facts that gave rise to a reasonable suspicion that she lacked the normal use of her mental or physical faculties by reason of the introduction of a substance into the body. *See* Tex. Penal Code § 49.01(2)(A) (defining intoxication). The trial court also reviewed Trooper Estrada's body cam and patrol car videos admitted as evidence at the suppression hearing. Based on the totality of the circumstances, the trial court could have reasonably determined that Trooper Estrada articulated an objective basis for his reasonable suspicion that led him to elevate the traffic stop to a driving-while-intoxicated investigation. *See Ford*, 158 S.W.3d at 492. Thus, the trial court did not err in denying Herod's motion to suppress. We overrule Herod's second issue.

### III. The trial court did not abuse its discretion by denying Herod's motions for a mistrial.

Herod also contends that because "several documents, testimony[,] or other pieces of evidence" that had been excluded by the trial court were erroneously presented to the jury and were "highly prejudicial" and "incurable," the trial court should have granted her two motions for mistrial.

"A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Thus, a trial court may declare a mistrial "if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error." *Id.* A mistrial is appropriate only in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). A trial court should grant a mistrial only when residual prejudice remains after less drastic alternatives are explored, such as instructing the jury to consider as evidence only the testimony and exhibits admitted through witnesses on the stand. *Id.* at 884–85. "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Thus, "[a] mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Ladd*, 3 S.W.3d at 567.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). A reviewing appellate court will

11

"reverse only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) (internal quotes omitted). "The determination as to whether a given error calls for a mistrial must be made by examining the peculiar facts and circumstances of each case." *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990). "Error is not reversible if it is harmless." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "[T]he appellate court is not to substitute its judgment for that of the trial court, but rather must decide whether the trial court's decision was arbitrary or unreasonable." *State v. Gonzalez*, 855 S.W.2d 692, 695 n.4 (Tex. Crim. App. 1993). Absent such an abuse of discretion, an appellate court "would not be justified in reversing the judgment." *Smith*, 286 S.W.3d at 339.

At trial, Herod moved for a mistrial twice because Trooper Estrada's testimony improperly alluded to Herod's prior offenses, which were subject to a motion in limine. The first time, the State asked Trooper Estrada to describe his observations of Herod during the initial traffic stop. Trooper Estrada answered: "Bloodshot, red eyes, glossy eyes. She initially had handed me her probation card." The second time, Trooper Estrada stated that Herod was repeating the field-sobriety-test instructions back to him "because she's been stopped for a DWI prior to the stop." On both occasions, Herod's counsel objected to the testimony, which the trial court sustained, then moved for a mistrial, and because the trial court denied the mistrial motion, requested a limiting instruction. On both occasions, the trial court granted a limiting instruction. And after the second limiting instruction, the trial court excused the jury to admonish Trooper Estrada for alluding to Herod's prior offense.

12

We cannot conclude that this is an "extreme circumstance[], where the prejudice is incurable," such that the trial court abused its discretion by declining to grant a mistrial after Trooper Estrada alluded to Herod's "probation card" or prior stop for driving while intoxicated. *See Hawkins*, 135 S.W.3d at 77. Trooper Estrada's testimony about Herod's probation and prior stop was "uninvited and unembellished," and violated the motion in limine; however, it was "no[t] so inflammatory as to undermine the efficacy of the trial court's instruction to disregard." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (concluding in similar circumstances that "uninvited and unembellished reference to appellant's prior incarceration—although inadmissible—was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard"); *see also Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we generally presume the jury follows the trial court's instructions in the manner presented."). There is nothing in the record that suggests that Trooper Estrada's comments were "clearly prejudicial" to Herod and "of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *See Ladd*, 3 S.W.3d at 567. We overrule Herod's third issue on appeal.

## CONCLUSION

Having overruled Herod's issues on appeal, we affirm the trial court's judgment of conviction.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed:   September 25, 2025

Do Not Publish