

# NUMBER 13-24-00077-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DANIEL CLAYTON STOGNER,                                  Appellant,

v.

THE STATE OF TEXAS,                                       Appellee.

## ON APPEAL FROM THE 26TH DISTRICT COURT
## OF WILLIAMSON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Cron**

A jury convicted appellant Daniel Clayton Stogner of possession of a controlled substance, methamphetamine, in an amount of four grams or more but less than 200 grams, and he was sentenced to five years' imprisonment. *See* TEX. HEALTH & SAFETY CODE § 481.115(d); TEX. PENAL CODE § 12.33. In five issues, Stogner argues that: (1) the

evidence is legally insufficient to support his conviction; (2) the trial court erred in assessing court costs against him because he is indigent; (3) the trial court erred in assessing a fine against him because he is indigent; (4) the trial court erred in assessing courts costs without a hearing; and (5) the trial court erred in assessing a fine without a hearing. We affirm.[1]

## I.   BACKGROUND

### A.   Jury Trial[2]

Around 11:00 p.m. on April 10, 2022, Deputy Mark Bell with the Williamson County Sheriff's Office (WCSO), a K9 handler, conducted a traffic stop on Stogner for failure to use his turn signal "four to five" times while changing lanes on a motorcycle. Stogner came to stop about a "half a mile" from where Deputy Bell turned his lights on. Ashley Pile was the rear passenger on the motorcycle, but she initially provided the deputy with a different last name. After running their information, Deputy Bell learned that Pile had an active felony warrant for fraudulent use or possession of identifying information, and she was subsequently placed under arrest.

Another officer, Detective John Barlett, arrived on scene to assist, and Pile was placed in his patrol unit because Deputy Bell's "K9 partner" occupied the entire backseat of his patrol unit. Prior to placing Pile in Detective Bartlett's patrol unit, Deputy Bell

---

[1] This case is before the Court on transfer from the Third Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] This section is a summary of the testimony given at the jury trial held on December 1, 2023, December 4, 2023, and December 5, 2023.

searched her and her purse[3] but did not locate any contraband. Detective Bartlett, however, located a knife, lighter, and flashlight on her person.

Deputy Bell explained that Stogner consented to a search of the motorcycle and that when he started his search, he initially did not see anything incriminating. He explained that Detective Barlett, on the other hand, "observed a black box" or container that was affixed to the motorcycle with "hook and pile Velcro" underneath the left handlebar. While Detective Barlett was looking at the motorcycle, he was speaking to Stogner who admitted to having "a small amount of marijuana on his person."

When he first observed the black box, Deputy Bell noticed "a bunch" of Ziploc bags stuffed inside, and once it was removed from the motorcycle, he pulled the contents out and "noticed [a] crystalized substance in those bags." Based on his training and experience, he believed the substance to be methamphetamine. He conducted a field test on one of the baggies, and he obtained a presumptive positive result for methamphetamine. Additionally, he explained that a bag pulled from the black box contained a substance he identified as marijuana.

Deputy Bell explained that, when approaching a motorcycle during a traffic stop, he is paying attention "[t]o movements, mostly hands." He also indicated he never saw Pile put her hands towards the black box where the methamphetamine was located. Additionally, Deputy Bell explained that Stogner acknowledged the motorcycle belonged to him even though it was registered to his ex-wife.

Deputy Bell explained that he arrested Stogner (as opposed to Pile) for possession

---

[3] We note that her purse was filled with a number of items.

3

of methamphetamine because "where they were sitting on the motorcycle, it was in his direct reach. It was actually just under his left hand. And then he—he took ownership of the motorcycle, and he was driving the motorcycle." He also agreed that Stogner had admitted to smoking marijuana, and marijuana was located within the black box. The baggies and black box were submitted into the evidence locker, and Deputy Bell requested drug recognition and weight recognition testing to be done by the Texas Department of Public Safety (DPS) crime lab. He also requested fingerprint testing on the black box.

On cross, Deputy Bell conceded that Stogner could have discarded the black box before or after his lights were activated. He also agreed that he did not see Stogner make any gestures towards the black box. But he could not recall whether Stogner appeared to be staring at the black box. On redirect, Deputy Bell again explained that during the traffic stop, he did not see Pile's hands go near the black box and clarified that "she would have had to lean forward to reach that area. So I did not see that."

Footage from Deputy Bell's body camera worn during the traffic stop was admitted into evidence.[4]

Detective Bartlett testified that he provided back up for Deputy Bell, and he obtained verbal consent from Stogner to search the motorcycle where he located a black box with his flashlight. He said the black box was located "[i]n between the handlebars and the windshield, underneath the handlebars." He explained that, since he rides motorcycles pretty frequently, he recognized the black box should not be there, and he

---

[4] We observe that portions of the video are difficult to hear because of background wind noise. Additionally, not all of the interactions between the individuals at the scene were captured on Deputy Bell's body camera.

pulled it off and opened it up. He continued, "[I] could immediately smell marijuana. It had rolling papers and little baggies of white substance."

After a search incident to arrest of Stogner, Detective Bartlett located approximately $1,300, a marijuana grinder, and rolling paper. Stogner was placed in the back of his patrol car where Pile was located. He explained that he likes to put people in the backseat together because they will often talk, and the vehicles have cameras. The State offered a video showing Stogner and Pile talking in the back of Detective Bartlett's patrol unit. Detective Bartlett testified that in the video, Stogner told Pile that "[h]e should have ran." Additionally, he testified as follows:

> [State]: Right then when she, quoting her, said, "I did not have that much s[***]," what did the defendant say?
>
> [Detective Bartlett]: He said that he did.

Detective Bartlett conceded that if Stogner knew the black box was there and that it contained methamphetamine, he could have attempted to discard it.

Harmoni Whittenton, a crime scene specialist with the WSCO, testified she was requested by Deputy Bell to see if she could locate any latent prints on four baggies, and no latent prints were located. She also testified that she believed crime scene specialist Carlos Cardona processed "two joint-rolling papers and a black plastic container" for latent prints, but to her knowledge, he did not locate any either.

Kiersten Drake testified that she is employed with the DPS crime laboratory in Austin as a "seized drug analyst." She received at least four items for potential testing but only did testing on one. The testing identified methamphetamine, and the weight was "9.89 grams, plus or minus 0.06 grams." After her testimony, the State rested.

5

The defense called one witness, Justin Staggs. Staggs testified that he hired Stogner for a short time to remodel a "barndominium." He explained he paid him in cash, and he always paid him in cash as it was a side job. He confirmed that the last time he paid him was April 8 or April 9, 2022, and he paid him $1,500. Thereafter, the defense rested.

The jury found Stogner guilty and assessed punishment at five years' imprisonment and a fine in the amount of $2,500. After the jury was discharged, the trial court proceeded to orally pronounce his sentence in relevant part as follows: "[M]r. Stogner, in accordance with the jury's verdict, at this time I sentence you to five years confinement in the institutions division of the Texas Department of Criminal Justice. I assess a fine of $2,500 and costs of court. I give you credit for two days previously served."

## B.    Indigence, Judgment & Bill of Costs

Prior to trial, Stogner was appointed counsel after completing an affidavit of financial condition. And after his trial, he was appointed appellate counsel for this appeal.

On the same day Stogner was sentenced, a judgment of conviction was entered reflecting, among other things, a $2,500 fine and $290 in court costs. In relevant part it also stated, "Upon release from confinement, the Court ORDERS Defendant to proceed without unnecessary delay to the District Clerk's office, or any other office designed by the Court or the Court's designee, to pay or to make arrangements to pay any fine, court costs, and restitution due."

Additionally, that same day a "Williamson County Certified Bill of Cost, Criminal Case 22-0630-K26" was filed that showed $290 in "TOTAL MANDATORY COURT

6

COSTS." Under "FELONY," it listed "State Consolidated CC $185.00" and "Local Consolidated CC $105.00." This appeal followed.

## II. POSSESSION OF A CONTROLLED SUBSTANCE

By his first issue, Stogner argues there was insufficient evidence to establish beyond a reasonable doubt that he knowingly possessed a controlled substance. He contends that he "has listed the potential affirmative links, and the evidence defeating those links one at a time." Building on this premise, Stogner concludes that the totality of the circumstances fails to link him to the methamphetamine. The State responds that the evidence, when viewed in the proper light, supports a reasonable inference that Stogner possessed the methamphetamine.

## A. Standard of Review

Unless it is supported by legally sufficient evidence, a criminal conviction cannot stand. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). "Evidence supporting a conviction is legally sufficient if a rational trier of fact could have found each element of the offense beyond a reasonable doubt." *Id.* (citations omitted). Conversely, "evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found each essential element of the charged offense was proven beyond a reasonable doubt." *Kiffe v. State*, 361 S.W.3d 104, 107 (Tex. App.—Houston [1st Dist.] 2011, pet ref'd).

When reviewing the sufficiency of the evidence, we "view[] the evidence in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*,

7

443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (deciding that the *Jackson v. Virginia* "legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"). To make this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Ogbuehi v. State*, 706 S.W.3d 689, 694 (Tex. App.—Austin 2025, no pet.) (quotation omitted). Also, "[i]n reviewing the sufficiency of the evidence, we should look at 'events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)).

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (citation omitted). "[C]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor,' and 'can be sufficient' on its own 'to establish guilt." *Ogbuehi*, 706 S.W.3d at 694 (quoting *Kiffe*, 361 S.W.3d at 108). "The trier of fact is the exclusive judge of the credibility and weight of the evidence and is allowed to draw any reasonable inference from the evidence so long as it is supported by the record." *David*, 663 S.W.3d at 678 (citation omitted). "[A] factfinder may disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted." *Hernandez v. State*, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005). Juries, however, are not permitted to draw conclusions based on mere speculation. *Hooper*, 214 S.W.3d at 16 ("Speculation is mere theorizing

8

or guessing about the possible meaning of facts and evidence presented."). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

In determining whether the evidence is legally sufficient, we compare the evidence produced at trial to "the essential elements of the offense as defined by the hypothetically correct jury charge." *David*, 663 S.W.3d at 678 (citation omitted). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "The 'law as authorized by the indictment' includes the statutory elements of the offense and those elements as modified by the indictment.'" *David,* 663 S.W.3d at 678 (citation omitted).

## B.      Applicable Law

Under a hypothetically correct jury charge, the State had to prove beyond a reasonable doubt that (1) Stogner; (2) knowingly or intentionally; (3) possessed; (4) at least four grams but less than 200 grams of a controlled substance. *See* TEX. HEALTH & SAFETY CODE § 481.115(d). "'Possession' means actual care, custody, control, or management." *Id.* § 481.002(38); TEX. PENAL CODE § 1.07(a)(39); *see also Sheppard v. State*, No. 03-10-00868-CR, 2012 WL 6698963, at *3 (Tex. App.—Austin 2012, no pet.) (mem. op., not designated for publication) ("To support a conviction for possession of a controlled substance, the State must prove, first, that the defendant exercised care,

9

custody, control, or management over the substance and, second, that he knew the matter possessed was contraband.") (citation omitted). "When an accused is not in exclusive possession and control of the place where the contraband is found, it cannot be concluded or presumed that [he] had knowledge of or control over the contraband unless there are additional independent facts and circumstances connecting or linking [him] to the knowing possession of contraband." *Allen v. State*, 249 S.W.3d 680, 690 (Tex. App.—Austin Jan. 27, 2017, no pet.) (citations omitted). The accused's connection with the drug must be more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). "Mere presence at the location where the contraband is found is insufficient by itself to establish possession of contraband." *Allen*, 249 S.W.3d at 691 (citations omitted). But presence or proximity when combined with other evidence, direct or circumstantial, may be sufficient to establish actual care, custody, or control of the contraband. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

Non-exclusive relevant factors that may, alone or in combination, sufficiently establish knowing possession have been identified as:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

10

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (quoting *Evans*, 202 S.W.3d at 162 n.12).

"Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Id.* Furthermore, it is "[t]he logical force of the circumstantial evidence, not the number of links, that support's a jury's verdict." *Evans*, 202 S.W.3d at 166.

## C.    Analysis

Viewing the evidence in the light most favorable to the verdict, we note that it was undisputed that Stogner was the driver of the motorcycle, and Pile, seated behind him, was the passenger. *See Tate,* 500 S.W.3d at 414 (listing among factors, proximity and presence); *see also Jenkins v. State*, No. 02-19-00241-CR, 2020 WL 3969861, at *5 (Tex. App.—Fort Worth, June 11, 2020, no pet.) (mem. op., not designated for publication) (deciding that the evidence was sufficient to support the jury's determination that appellant possessed methamphetamine and that he knew it was methamphetamine where, although appellant was not the sole occupant of the motorcycle, "he was driving the motorcycle [and] his thirteen-year-old passenger was sitting behind him on the rear seat").

Deputy Bell testified that Stogner was in proximity to the methamphetamine because "where they were sitting on the motorcycle, it was in his direct reach. It was actually just under his left hand." *See Tate,* 500 S.W.3d at 414 (listing proximity as a factor). The jury could have reasonably inferred that Pile did not place the

11

methamphetamine in the black box based on Deputy Bell's testimony that he did not see her hands go near the black box and that "she would have had to lean forward to reach that area." *See id.* (finding sufficient evidence after explaining in part "the jury could have reasonably inferred that the passengers did not put the syringe in the compartment while [the appellant] and [the detective] were at the rear of the vehicle based on [the detective's] testimony that the front-seat passenger never reached over to the compartment and that the back-seat passenger could not reach it").

Moreover, Deputy Bell testified while the motorcycle was registered to Stogner's ex-wife, Stogner "took ownership of the motorcycle, and he was driving" it. *See id.* (listing among factors, whether the defendant owned or had the right to possess the place where the drugs were found).

Further, marijuana and rolling papers were located in the black box and Stogner admitted to having "a small amount of marijuana on his person." *See id*. (listing among factors, whether the defendant possessed other contraband or narcotics when arrested); *Allen*, 249 S.W.3d at 701 ("Possession of another type of contraband than that charged is one of the potential factors that may be considered in determining a link between the accused and the contraband in question."). In other words, while Stogner denied ownership of all of the narcotics in the black box, he admitted possessing an illicit drug (albeit not methamphetamine) at the scene where drugs were located. *See Tate,* 500 S.W.3d at 414. Further, Detective Bartlett located "a marijuana grinder, and rolling paper" on Stogner. *See id.* He also located $1,300 on Stogner, and while Staggs testified that he had paid Stogner $1,500 a day or so before Stogner's arrest, the jury heard this testimony, and they were free to disbelieve all or some of Stagg's testimony. *See id.* (listing among

12

factors, whether the defendant was found with a large amount of cash); *Hernandez*, 161 S.W.3d at 501; *see also Larios v. State*, No. 13-15-00022-CR, 2015 WL 9487107, at *4 (Tex. App.—Corpus Christi–Edinburg Dec. 29, 2015, no pet.) (mem. op., not designated for publication) (concluding that the evidence was sufficient to support appellant's conviction where, although appellant and her family offered viable explanations for her possession of more than $4,000, the "the jury [already] heard all of this evidence" and was entitled to disbelieve it).

Additionally, although it is undisputed that Stogner did not flee after he came to a stop, he was also captured on video telling Pile that "[h]e should have ran." *See Tate,* 500 S.W.3d at 414. Stogner was also captured responding to Pile after she denied "having that much s[***] in her bag" saying, "I did." From this, the jury could have reasonably inferred that Stogner was referring to the methamphetamine even though he did not specifically reference it. *See id.* And while Stogner argues that his fingerprints were not located on the exterior of the black box or its contents, that no DNA testing was done, that he did not stare at or make any gestures toward the black box, that he had no paraphernalia associated with the use of methamphetamine on his person, that he did not appear to be under of the influence of methamphetamine, and that he was not in a suspicious area, "the absence of certain links do[es] not weigh against those that are present." *See Ferguson v. State*, 313 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2009, no pet); *see also Ezebunwa v. State*, No. 03-14-00682-CR, 2016 WL 4527598, at *2 (Tex. App.—Austin Aug. 25, 2016, no pet.) (mem. op., not designated for publication) ("The number of links or factors is not dispositive."); *Briscoe v. State*, No. 13-20-00445-CR, 2022 WL 710083, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, no pet.)

13

(mem. op., not designated for publication).

We are limited to determining whether under the evidence presented, viewed in a light most favorable to the prosecution, *any* reasonable juror could have concluded that Stogner knowingly or intentionally exercised actual care, custody, or control, over the methamphetamine. *See Jackson*, 443 U.S. at 326 (emphasis in original). And when measured by the elements of a hypothetically correct jury charge, we hold the evidence was legally sufficient such that a rational juror could have concluded that Stogner knowingly or intentionally possessed at least four grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE §§ 481.115(d), 481.002(38); TEX. PENAL CODE § 1.07(a)(39). Accordingly, we overrule Stonger's first issue.

## II.     COURT COSTS

By his second issue, Stogner complains that the trial court erred by assessing court costs against him because he is indigent. In his reply, he clarifies that there is insufficient evidence to assess court costs against him.

## A.     Applicable Law

"[W]e review the assessment of court costs on appeal to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost, and traditional *Jackson* evidentiary-sufficiency principles do not apply." *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). The Code of Criminal Procedure requires that a judgment order a defendant to pay court costs. *See* TEX. CODE CRIM. PROC. ANN. art. 42.16 (applicable when the punishment is something other than a fine); *see also Ketchum v. State*, No. 08-22-00114-CR, 2022 WL 16758491, at *2 (Tex. App.—El Paso, Nov. 8, 2022, no pet.) (mem. op., not designated for publication) ("Thus,

14

upon the defendant's conviction, the imposition of courts costs is mandatory.") (citation omitted). But only statutorily authorized court costs may be assessed against a criminal defendant. *Johnson*, 423 S.W.3d at 389; *Martinez v. State*, 507 S.W.3d 914, 916 (Tex. App.—Waco 2016, no pet.) ("The allowable types and amounts of costs are set by statute, and no cost may be imposed unless it is 'expressly provided by law.'") (citation modified). Court costs are not punitive. *Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009). Court costs, as reflected in a certified bill of costs, need neither be orally pronounced nor incorporated by reference in the judgment to be effective. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011) ("This is because court costs do not 'alter the range of punishment to which the defendant is subject, or the number of years assessed'; and, thus, are not part of the sentence.").

## B.    Analysis

At the outset, we will assume without deciding that Stogner can raise this complaint for the first time on appeal despite his failure to object when the trial court orally pronounced that he would be assessed an unspecified amount of court costs. *See Johnson*, 423 S.W.3d at 390 ("[W]e conclude that a criminal defendant need not preserve an objection in the trial court to raise a claim challenging the bases for the imposition of court costs for the first time on appeal."); *see also Diaz v. State*, No. 03-15-00539-CR, 2016 WL 1084398, at *6 (Tex. App.—Austin Mar. 17, 2016, no pet.) (mem. op., not designated for publication) ("Because court costs do not need to be incorporated into a judgment by reference or orally pronounced, defendants may challenge the imposition of court costs for the first time on appeal."); *Cruder v. State*, No. 03-24-00328-CR, 2025 WL 1583514, at *7–8 (Tex. App.—Austin June 5, 2025, no pet.) (mem. op., not designated

15

for publication) (assuming appellant's issue could be raised that the trial court erred by assessing costs against him after explaining that it was not entirely clear that appellant can present this claim on appeal because he did object below and the trial court informed the parties during sentencing that it would be imposing the costs at issue, and appellant had an opportunity to object).

Although Stogner argues that the imposition of court costs against him is precluded because he is indigent, *see* TEX. CODE CRIM. PROC. ANN. art. 26.04(p), several appellate courts, including this Court and the transferor court, albeit in unpublished cases, have upheld the imposition of court costs on indigent defendants. *See, e.g., Dority v. State*, 631 S.W.3d 779, 793 (Tex. App.—Eastland 2021, no pet.) (recognizing that mandatory court costs can be recovered from an indigent defendant but not a court reporter record fee); *Allen v. State*, 426 S.W.3d 253, 259 (Tex. App.—Texarkana 2013, no pet.) ("We conclude the more persuasive authority indicates that a trial court can order an indigent defendant to pay court costs provided payment is not demanded before the trial court proceedings have concluded."); *see also Osuna v. State*, No. 03-18-00239-CR, 2018 WL 3233733, at *12 (Tex. App.—Austin July 3, 2018, no pet.) (mem. op., not designated for publication) (concluding that the trial court did not err in assessing court costs against appellant despite his financial indigency); *Hernandez-Prado v. State*, No. 03-15-00289-CR, 2016 WL 3144098, at *12 (Tex. App.—Austin May 26, 2016, pet ref'd) (mem. op., not designated for publication) ("We agree with those cases standing for the proposition that an indigent defendant can be assessed court costs."); *Ketchum*, 2022 WL 16758491, at *3 ("Because nothing prohibits imposing court costs on an indigent defendant, and because Appellant directs us to no statute or other authority prohibiting the imposition of

16

court costs on an indigent defendant, we conclude that the trial court did not err by doing so."); *Rivers v. State*, No. 13-16-00407-CR, 2017 WL 2492610, at *1–2 (Tex. App.—Corpus Christi–Edinburg June 8, 2017, no pet.) (mem. op., not designated for publication) (overruling appellant's first issue that trial court erred in assessing court costs against her because she is indigent). Accordingly, we conclude that the trial court did not err in assessing court costs "[u]pon [his] release from confinement" against Stogner despite his presumed indigency. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p); *Osuna*, 2018 WL 3233733, at *10 n.9 (noting that appellant does not challenge the basis of the court costs imposed, but rather the imposition of court costs at all given his indigence). Because it appears Stogner is also challenging the basis of the court costs imposed, we turn now to address that issue.

Here, the record contains a certified bill of cost for a total of $290 in court courts consisting of $185.00 for a "State Consolidated CC" and $105.00 for a "Local Consolidated CC." *See* TEX. LOC. GOV'T CODE §§ 133.102(a)(1) (stating that "a person convicted of an offense shall pay as a court cost, in addition to all other costs: . . . $185 on conviction of a felony"), 134.101(a) ("A person convicted of a felony shall pay $105 as a court cost, in addition to all other costs, on conviction."); *Bradshaw v. State*, 707 S.W.3d 412, 416–20 (Tex. Crim. App. 2024) (clarifying that the state consolidated court costs of $185 in Texas Local Government Code § 133.102(a)(1) should apply regardless of the date of the offense if the defendant was convicted after January 1, 2020); *see also Joseph v. State*, No. 01-23-00937-CR, 2025 WL 714982, at *3 (Tex. App.—Houston [1st Dist.] Mar. 6, 2025, no pet.) (mem. op., not designated for publication) (en banc, per curiam) (explaining that although *Bradshaw* only addressed the $185 state consolidated court

cost, the same rationale applies to the $105 local consolidated court cost). Thus, because the certified bill of costs reflects statutorily-mandated court costs and Stogner was convicted after January 1, 2020, we conclude there is a sufficient basis for the assessment of $290 in court costs against Stogner, and we overrule his second issue.

### III.    FINE

By his third issue, Stogner complains that the trial court erred by assessing a fine against him because he is indigent. In his reply, he again clarifies that there is insufficient evidence to assess him a fine.

### A.    Applicable Law

When a defendant is fined, "the judgment shall be that the defendant pay the amount of the fine and all costs to the state." TEX. CODE CRIM. PROC. ANN. art. 42.15(a). A jury is not authorized to impose court costs by their verdict in a criminal case, but it can assess fines in assessing punishment. *See id.* art. 37.07(1)(a)–(b); *see also* TEX. PENAL CODE §§ 12.01–.43; *see also Curry v. State*, No. 13-24-00429-CR, 2025 WL 1523280, at *3 (Tex. App.—Corpus Christi–Edinburg May 29, 2025, no pet.) (mem. op., not designated for publication). "A fine is not a court cost or fee; it is part of the punishment." *Anastassov v. State*, 664 S.W.3d 815, 823 (Tex. Crim. App. 2022); *see Armstrong v. State,* 340 S.W.3d 759, 767 (Tex. Crim. App. 2011) (explaining that because "[f]ines are punitive and they are intended to part of the convicted defendant's sentence", they "generally must be orally pronounced in the defendant's presence"); *see also Ferguson v. State*, No. 06-22-00043-CR, 2022 WL 4180471, at *2 (Tex. App.—Texarkana Sept. 6, 2022, no pet.) (mem. op., not designated for publication) ("Fines are punitive, and the punishment statute does not exclude indigent defendants from the optional fine.").

18

**B. Analysis**

Again, assuming without deciding that Stogner can raise this complaint for the first time on appeal, Stogner does not direct us to any authority concluding the trial court erred by imposing a fine on an indigent defendant. *See generally Johnson*, 423 S.W.3d at 390; *see also Ferguson*, 2022 WL 4180471, at *2 (analyzing appellant's argument that the fine was improperly assessed because she was undisputably indigent without discussing preservation). Indeed, we have found a number of cases which support leaving the fine intact, despite Stogner's claim of indigency. *See, e.g.*, *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013) (deleting only the $1,039.75 in court-appointed attorney fees from an order assessing court costs in which the total implicitly included a $5,000 fine); *Wright v. State*, 930 S.W.2d 131, 133–34 (Tex. App.—Dallas 1996, no pet.) (reasoning in the context of an Eighth Amendment challenge that "[t]he fact that appellant may be indigent for purposes of retaining trial and appellate counsel . . . does not compel the conclusion that he is indigent for purposes of paying his fine in twenty dollar monthly installments"); *see also Gates v. State*, No. 02-23-00004-CR, 2024 WL 482436, at *1, 6 (Tex. App.—Fort Worth Feb. 8, 2024, no pet.) (mem. op., not designated for publication) (overruling appellant's challenge to the assessed fine and court costs based in part on his assertion of "his indigence at the time of sentencing")*; Amparan v. State*, No. 11-21-00162-CR, 2022 WL 17684377, at *4 (Tex. App.—Eastland Dec. 15, 2022, no pet.) (mem. op., not designated for publication) (reasoning again when considering appellant's eighth amendment prohibition against excessive fines argument that "[b]ecause the trial court was not required to make a special accommodation or consideration of Appellant's indigence when it assessed the $10,000 fine, the order to withdraw funds does not impose

19

excessive terms on Appellant's obligation to pay the fine"); *Ferguson*, 2022 WL 4180471, at *2 (overruling appellant's challenge to the fine based on her indigence). Accordingly, we leave intact the $2,500 fine, both orally pronounced in Stogner's presence and reflected in the judgment, to be paid "upon [his] release from confinement." *See* TEX. CODE CRIM. PROC. ANN. art. 42.01, § 1(9) (providing that a written judgment shall reflect any fine assessed in conjunction with any term of confinement). We overrule his third issue.

## IV.    INABILITY-TO-PAY INQUIRY

In his fourth and fifth final points, Stogner argues the trial court assessed costs and a fine without a hearing on the record about his ability to pay. After his brief and reply brief were filed, Stogner notified this Court by letter that the Texas Court of Criminal Appeals did not adopt the reasoning in *Cruz v. State*, 694 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2023, pet. granted), which he heavily relied upon in his briefing. *See* 698 S.W.3d 265 (Tex. Crim. App. 2024). Although Stogner maintains that the high court's decision in *Cruz v. State* did not impact his first three issues, he effectively concedes that it impacted his last two issues. *See id.* We agree.

Stogner has not directed us to any request made by him of an ability-to-pay inquiry on the record nor to an objection to the lack of such an inquiry as to the imposition of court costs or a fine. *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1) ("Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case in which the defendant entered a plea in open court . . . , a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs."); *see also* TEX. R. APP. P. 33.1 (concerning preservation of error for

20

appeal). Instead, he contends "[t]he record fails to reflect a hearing to assess Stogner's ability to pay the court costs and the fine."

In *Cruz v. State*, the Texas Court of Criminal Appeals held that, because "[a]n ability-to-pay inquiry is not fundamental to the adjudicatory system," it is a *Marin* category-three right—i.e., it must be "implemented upon request or else forfeited." 698 S.W.3d at 268–69 (claiming on appeal that after "his jury assessed him a fine, the trial court failed to conduct an ability-to-pay inquiry"); *see also Esparza v. State*, No. 13-23-00550-CR, 2025 WL 797503, at *7 (Tex. App.—Corpus Christi–Edinburg Mar. 13, 2025, no pet.) (mem. op., not designated for publication) (overruling issue that the trial court erred by assessing $315 in court costs against him without holding an ability-to-pay hearing on the record because appellant forfeited his right by failing to request one in the trial court). As such, we conclude Stogner has forfeited his right to an on-the-record article 42.15 ability-to-pay hearing by failing to request one in the trial court. *See Cruz*, 698 S.W.3d at 271; TEX. R. APP. P. 33.1(a). We overrule his fourth and fifth issues.

## V. CONCLUSION

We affirm the trial court's judgment.

JENNY CRON
Justice

Do not publish
TEX. R. APP. P. 47.2(b)

Delivered and filed on the
15th day of January, 2026.